LATHAM & WATKINS LLP
Belinda S Lee (CA Bar No. 199635)
Gavin M. Masuda (CA Bar No. 260480)
Diana A. Aguilar (CA Bar No. 304427)
Aamir Virani (CA Bar No. 328920)
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095
*belinda.lee@lw.com*
*gavin.masuda@lw.com*
*diana.aguilar@lw.com*
*aamir.virani@lw.com*

ASIAN AMERICANS ADVANCING JUSTICE –
ASIAN LAW CAUCUS
Angela F. Chan (CA Bar No. 250138)
55 Columbus Avenue
San Francisco, CA 94111
Telephone: +1.415.848.7719
Facsimile: +1.415.896.1702
*angelac@advancingjustice-alc.org*

*Attorneys for Plaintiff Jose Armando Escobar-Lopez*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ARMANDO ESCOBAR-LOPEZ,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF DALY CITY, DALY CITY POLICE DEPARTMENT, and DOES 1-20 inclusive,<br><br>Defendants. | Case No. 20-cv-1781<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

Plaintiff Jose Armando Escobar-Lopez alleges, based on information and belief, as follows:

## I.      INTRODUCTION

1.      The Constitutions of the United States and the State of California protect all persons present within our borders—whether citizen or immigrant—from unreasonable searches and seizures, and from deprivations of life, liberty or property without due process of law.  A pair of recently enacted California laws—the TRUTH Act and the Values Act—further protect the people of California by preventing state and local agencies from assisting federal immigration enforcement activities and transferring Californians to federal immigration custody without their consent.[1]  These laws embody values deeply rooted in our State, including that *all* Californians, including immigrants, should be able to participate in their state and local communities and interact with state and local police without fear of being torn from their communities.

2.      This case arises from a series of unlawful acts by two officers of the Daly City Police Department ("DCPD") that violated Plaintiff Jose Armando Escobar-Lopez's well-established rights under federal and California laws.  Specifically, on May 11, 2019, DCPD officers Shane Hart and Justin Todaro (together, the "Officers") violated both the United States Constitution and the California Constitution by stopping, arresting, and detaining Mr. Escobar-Lopez without probable cause and without due process—*and without ever citing or charging Mr. Escobar-Lopez with committing a crime*.  The Officers further violated the Values Act and the TRUTH Act by: (1) investigating Mr. Escobar-Lopez's immigration status and reporting him to federal immigration authorities; (2) detaining and arresting Mr. Escobar-Lopez for the sole purpose of transferring him to federal immigration custody; and (3) notifying immigration authorities and transferring him to federal immigration custody.

3.      Even worse, the Officers were enabled in their conduct by Defendant City of Daly City ("Daly City") and DCPD policies that blatantly failed to comply with—and in certain

[1] The Transparent Review of Unjust Transfers and Holds Act ("TRUTH Act"), AB-2792, is codified at Section 7283 of the California Government Code.  The California Values Act ("Values Act"), SB 54, is codified at Section 7284 of the California Government Code.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

1

instances, directly contradicted—protections provided by the United States Constitution and California state law.  Among other things, DCPD policy in effect as of May 2019:  (1) failed to communicate the broad prohibition against engaging in immigration investigations; (2) did not prohibit the enforcement of civil and criminal immigration law, including the detention of persons based on immigration status or on a civil immigration warrant; and (3) did not specify the restrictions against assisting federal immigration authorities with immigration enforcement. These California state law requirements were *known to Daly City and DCPD* because advocates for immigrants' rights (including counsel in this case) notified DCPD as long ago as December 2017 of the California state law prohibitions and provided a model policy to offer guidance on implementation.  Despite receiving ample notice about the requirements of the Values Act and the TRUTH Act, Daly City and DCPD did nothing to correct DCPD's legally defective policies.

4.    As a result of the Officers' conduct and Daly City/DCPD's failures to prevent the Officers from violating federal and California state law, Mr. Escobar-Lopez was ripped from his loved ones and thrown into inhumane immigration detention conditions at various federal facilities in Northern and Central California for *nearly three months*.  During these months, Mr. Escobar-Lopez lost his liberty, lost his job, and suffered under the belief that he would never see his family or loved ones again.  Mr. Escobar-Lopez also was placed in immigration proceedings as Immigration and Customs Enforcement ("ICE") is seeking to deport him.  These proceedings are ongoing.

5.    It was not until July 2019 that Daly City and DCPD—pressured by local and national media reporting about their egregious treatment of Mr. Escobar-Lopez—finally took steps to investigate the Officers' wrongful conduct and the deficient DCPD policy that enabled it.  Both the City Council of Daly City and DCPD Police Chief Patrick Hensley sent letters to the Board of Immigration Appeals ("BIA") advocating for Mr. Escobar-Lopez's release and admitting that he should not be in ICE custody.  Unfortunately for Mr. Escobar-Lopez, these actions were far too little, and far too late.

6.    In August 2019, DCPD finally adopted a new immigration enforcement policy. But this policy was developed and adopted without sufficient public review and comment, and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

still falls well short of complying with the Values Act and the TRUTH Act because it continues to permit DCPD to turn over community members to ICE in cases that are not permitted by the Values Act, and it fails to comply with notice requirements under the TRUTH Act.

7. Mr. Escobar-Lopez brings this lawsuit to recover for the significant physical and emotional injuries he suffered as a result of Defendants' and the Officers' conduct, and to prevent similar injuries to himself and others by requiring Daly City and DCPD to accept responsibility for their actions, and to fix their still-deficient policies. The specific relief sought by Mr. Escobar-Lopez against each Defendant is alleged herein.

## II.    PARTIES

8. Plaintiff Jose Armando Escobar-Lopez is 22-years old and resides in the City of El Sobrante, Contra Costa County, in the State of California. Mr. Escobar-Lopez resided in the City and County of San Francisco during the events relevant to and described in this Complaint.

9. Defendant City of Daly City ("Daly City") is a political subdivision of the State of California that can be sued in its own name. Upon information and belief, Daly City includes, operates, governs, and is responsible for the Daly City Police Department ("DCPD") pursuant to the laws of the State of California and Daly City.

10. Defendant Daly City Police Department ("DCPD") is a department of and/or municipal entity within Daly City that can be sued in its own name.

11. At all relevant times, Defendants DOES 1 through 20 (also "DOE Defendants") were agents, employees, or otherwise representatives of Daly City, or parties involved in the development of DCPD police policies. Plaintiff alleges that many, if not all, of the DOE Defendants are residents of the Northern District of California or conduct business in the Northern District of California. Upon information and belief, Plaintiff alleges that the DOE Defendants are legally responsible for the wrongs committed against Plaintiff, as alleged herein. When Plaintiff becomes aware of the true identities of one or more DOE Defendants, Plaintiff will amend this Complaint to add or substitute them as named defendants.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

3

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

### III.   **JURISDICTION AND VENUE**

12.   This Court has jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 1651 (writs).  Supplemental jurisdiction over state law claims is proper pursuant to 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated.

13.   Venue is proper in this Court pursuant to 28 U.SC. § 1391(b) because Defendants Daly City and DCPD reside in and can be found in this judicial district.  This action arises in San Mateo County and San Francisco County, and assignment in either the Oakland Division or the San Francisco Division is appropriate pursuant to Civil Local Rule 3-2.

### IV.   **DALY CITY LAW ENFORCEMENT PERSONNEL HAVE NO AUTHORITY TO ENFORCE FEDERAL IMMIGRATION LAW**

14.   Local (*i.e.*, non-federal) law enforcement officers are not permitted to independently enforce federal immigration laws. *Arizona v. United States,* 567 U.S. 387, 389 (2012).  Instead, local officers must be "deputized" by express written agreement of the United States Attorney General to perform the functions of federal immigration officers, including investigation, apprehension, or detention of persons suspected of violating federal immigration law. *See* 8 U.S.C. § 1357(g)(1).  Neither Daly City nor DCPD have entered into any such agreement, meaning that neither is authorized to enforce federal immigration law.  Indeed, such agreements are prohibited under the Values Act.

15.   The United States Supreme Court has long held that a person's immigration status (*i.e.*, whether a person is authorized to be present within the borders of the United States) is not a criminal matter. *See Arizona*, 567 U.S. at 389.  Because Daly City and DCPD are not authorized to enforce federal immigration law, and because a person's immigration status is irrelevant under state criminal law, DCPD officers have no authority to investigate a person's immigration status.

16.   Building on this fundamental principle, the California State Legislature acted in 2016 (by passing the TRUTH Act) and 2017 (by passing the Values Act) to further protect California communities from perceived abuses by federal immigration authorities and prevent

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

state or local involvement in federal immigration enforcement.  Together, the TRUTH Act and the Values Act further protect the people of California by prohibiting state and local agencies (including, municipal police departments) from assisting with federal immigration enforcement activities and by limiting transfers of Californians to federal immigration custody.

### A.    The TRUTH Act

17.    The TRUTH Act, signed September 28, 2016, and effective January 1, 2017, was adopted to "require[ ] critical transparency from ICE, ensure[ ] local communities have a voice, and create[ ] clear guidelines to guard against future abuses."[2]

18.    The TRUTH Act guards against abuse by providing individuals with the critical right to consent to certain federal immigration enforcement activity.  Under the TRUTH Act, local law enforcement agencies must provide an individual in custody with a written consent form before ICE is granted access to interview that individual.  This written consent form must "explain[ ] the purpose of the interview, that the interview is voluntary, and that he or she may decline to be interviewed or may choose to be interviewed only with his or her attorney present." Cal. Gov't Code § 7283.1(a).

19.    The TRUTH Act creates transparency by requiring that a local law enforcement agency must provide a copy of any ICE hold, notification, or transfer request to the individual at issue in the request.  The local law enforcement agency is also required to inform the individual whether or not it "intends to comply with the request."  Further, if "a local law enforcement agency provides ICE with notification that an individual is being, or will be, released on a certain date, the local law enforcement agency shall promptly provide the same notification in writing to the individual and to his or her attorney or to one additional" designee.  Cal. Gov't Code § 7283.1(b).

### B.    The Values Act

20.    The purpose of the Values Act, signed October 5, 2017, and effective January 1, 2018, is to protect the safety and well-being of all Californians by ensuring that state and local

---

[2] *See Assembly Committee on Public Safety: Hearing on AB 2792 (Bonta)- As Amended April 7, 2016*, Assemb. Comm. Public Safety (Ca. 2016) (statement of Rob Bonta, Member, Cal. State Assemb.).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

resources are not used to fuel mass deportations, separate families, unravel the fragile trust between immigrant communities and local and California state law enforcement, and violate Constitutional rights. The Values Act provides that "[e]ntangling state and local agencies with federal immigration enforcement programs diverts already limited resources and blurs the lines of accountability between local, state, and federal governments." Cal. Gov't Code § 7284.2(d).

21. Upon signing the Values Act, California's then-Governor Jerry Brown stated, "[t]hese are uncertain times for undocumented Californians and their families" and "[t]his bill strikes a balance that will protect public safety while bringing a measure of comfort to those families who are now living in fear every day."[3]

22. California has been a leader in advancing statewide policies that promote and ensure the health and safety of all its residents regardless of immigration status. The Values Act embodies that leadership and commitment to strengthening the trust between California's immigrant communities and state and local agencies, a trust that is essential to carrying out basic state and local functions. That trust is threatened when California state and local agencies are involved in immigration enforcement.

23. Under the Values Act, California law enforcement agencies are not permitted "to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes[.]" Cal. Gov't Code § 7284.6(a)(1).

24. Prohibited immigration enforcement activities under the Values Act include "[m]aking or intentionally participating in arrests based on civil immigration warrants," "[p]erforming the functions of an immigration officer, whether pursuant to Section 1357(g) of Title 8 of the United States Code or any other law, regulation, or policy," "[i]nquiring into an individual's immigration status," "providing personal information, as defined in Section 1798.3 of the Civil Code, about an individual," and "[d]etaining an individual on the basis of a hold request." Cal. Gov't Code § 7284.6(a)(1)(A), (B), (D), (E), (G).

---

[3] David Siders, *Brown signs 'sanctuary state' bill in California*, POLITICO, (Oct. 5, 2017, 2:47 PM), https://www.politico.com/story/2017/10/05/california-sanctuary-city-jerry-brown-signs-243503.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

25.    Under the Values Act, local law enforcement may choose to, but is never required to, notify ICE of the release date or other information regarding an individual if certain limited exceptions apply.  If a California state or local law enforcement agency elects to notify ICE, it is generally permitted *only* in cases of individuals who have been *convicted* of certain specified criminal offenses.  *See* Cal. Gov't Code §§ 7284.6(a)(1)(C), 7282.5(a).  The only exception is in a case where an individual is *charged* with a specified felony, and a judge enters a finding of probable cause to support the charge pursuant to Section 872 of the California Penal Code.  *See* Cal. Gov't Code § 7282.5(b) (applies to notifications, not transfer requests).  This exception applies to notification to ICE, not to transfers to ICE.

26.    Additionally, the Values Act greatly restricts the ability of local law enforcement to transfer individuals in their custody to ICE.  Local or state law enforcement agencies can only choose to, but are not required to, transfer individuals who have been *convicted* of certain specified criminal offenses, or for whom there is a judicial warrant or a determination of probable cause determination made by a federal judge that an individual has violated a federal criminal immigration law.  *See* Cal. Gov't Code §§ 7284.6(a)(4) (explaining when transfers to immigration authorities are permissible), 7282.5(a) (listing specific convictions that permit cooperation with immigration authorities), 7284.4(h) (defining "judicial probable cause determination" as a judicial determination concerning "federal criminal immigration law" violations), 7284.4(i) (defining "judicial warrant" as a warrant concerning "federal criminal immigration law" violations).

## V.    DCPD'S POLICY VIOLATED CALIFORNIA LAW AND THE UNITED STATES CONSTITUTION

27.    In May 2019, when the events giving rise to this action occurred, DCPD had in effect an Immigrations Violations Policy (Policy 427) (the "Immigration Violations Policy") that outlined guidelines and rules for addressing potential violations of federal immigration law and

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
7
Case No. 20-cv-1781

cooperating with federal immigration officials. The Immigrations Violations Policy was obtained from DCPD and is attached as **Exhibit A** to this Complaint.[4]

28. DCPD's Immigrations Violations Policy failed to comply with the law, including the Values Act. Among other things, the Immigrations Violations Policy failed to: (1) communicate the broad prohibition against engaging in immigration investigations; (2) prohibit the enforcement of civil and criminal immigration law, including the detention of persons based on immigration status; and (3) specify the restrictions against assisting federal immigration authorities with immigration enforcement.

29. **Failure to communicate prohibition against engaging in immigration investigations.** The Immigration Violations Policy failed to clearly prohibit DCPD from asking about an individual's immigration status or engaging in immigration enforcement investigations. Section 427.4 of the Policy stated that DCPD "shall not *normally* undertake immigration investigations or inquire into the citizenship or immigration status of persons encountered during police contacts and/or operations." (Emphasis added.) It also stated, "Department personnel should not question victims, witnesses, or arrested persons concerning their immigration status *except when that status is relevant to the crime or incident being investigated.*" (Emphasis added.) In contrast, the Values Act broadly prohibits DCPD from using its resources "to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes," and includes a strict prohibition against "[i]nquiring into an individual's immigration status." *See* Cal. Gov't Code § 7284.6(a)(1)(A).

30. **Failure to prohibit the enforcement of civil and criminal immigration law, including the detention of persons based on immigration status.** The Immigration Violations

---

[4] The Immigrations Violations Policy is marked with copyright labeling indicating that it was published by Lexipol, LLC on March 27, 2018. Upon information and belief, DCPD employed the services of Lexipol, LLC in drafting and/or adopting its policy manual, including its Immigration Violations Policy. Lexipol is in the business of, among other things, developing law enforcement policies in the United States, including in California. Lexipol offers a variety of products and services, including fully drafted policy manuals, daily training videos, and implementation services. Upon information and belief, Lexipol provides policymaking services to approximately 95% of California law enforcement agencies. *See* Eagly, Ingrid V. & Schwartz, Joanna C., *Lexipol: The Privatization of Police Policymaking*, 96 TEXAS LAW REVIEW 891 (2018).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

Policy failed to incorporate the Values Act's prohibition against the enforcement of federal criminal immigration laws. Section 427.3.1 of the Policy allowed "the fact that an individual is suspected of being an undocumented alien" to be a "basis for contact, detention, or arrest," as long as it is not the sole basis, if "immigration status is relevant to another criminal offense or investigation[.]" However, the Values Act prohibits "all efforts to investigate, enforce, or assist in the investigation or enforcement of any federal criminal immigration law that penalizes a person's presence in, entry, or reentry to, or employment in, the United States" except for the one narrow exception explained in paragraph 25 above. *See* Cal. Gov't Code §§ 7284.6(a)(1), 7284.4(f) (defining "immigration enforcement" under the Values Act).

31. In addition, the Immigration Violations Policy failed to include a prohibition against arresting an individual based on a civil immigration warrant, even though the Values Act strictly prohibits the "[m]aking or intentionally participating in arrests based on civil immigration warrants." Cal. Gov't Code § 7284.6(a)(1)(E). The Values Act includes this prohibition because civil immigration warrants are issued by the Department of Homeland Security ("DHS") and are not reviewed by a judge or neutral magistrate; they also are not issued after a finding of probable cause. Thus, the existence of a civil immigration warrant does not provide the probable cause basis for an arrest by a local law enforcement officer under the Fourth Amendment.

32. The Immigration Violations Policy further failed to include the Values Act prohibition against "[p]roviding personal information . . . about an individual, including, but not limited to, the individual's home address or work address unless that information is available to the public." *See* Cal. Gov't Code § 7284.6(a)(1)(D).

33. **Failure to specify the prohibitions and restriction against assisting federal immigration authorities with immigration enforcement.** The Immigration Violations Policy allowed DCPD to assist, support, or cooperate with ICE, provided that such services were requested by ICE and approved by the DCPD Chief of Police. Specifically:

a. Section 427.2 of the Immigration Violations Policy permitted DCPD to "assist in the enforcement of federal immigration laws" when "assisting ICE at its specific request" and "with approval from the Chief of Police."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

b.    Section 427.3.3 provided that "[i]f a specific request is made by ICE or any other federal agency, this Department will provide available support services, such as traffic control, peacekeeping efforts, or provide for the safety of the agent during the federal operation."

c.    Section 427.4 of the Immigration Violations Policy explicitly stated that it "does not prohibit [DCPD] employees from cooperating with federal immigration officials when requested[.]"

34.    These provisions directly contravened the Values Act's prohibition against *any* "[u]se [of] agency or department moneys or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes[.]" *See* Cal. Gov't Code § 7284.6(a)(1). The Values Act does not permit local police to assist ICE merely because ICE requests assistance or a chief of police approves the assistance. *See* Cal. Gov't Code § 7284.6.

35.    The Immigration Violations Policy also failed to include the Values Act prohibition against "[d]etaining an individual on the basis of a hold request." *See* Cal. Gov't Code § 7284.6(a)(1)(B). The Values Act prohibits the detention of an individual on the basis of an immigration hold request for the same reasons it prohibits arrests based on civil immigration warrants: immigration hold requests are issued by an ICE agent and are not reviewed by a judge or neutral magistrate, or based on a finding of probable cause. Detaining an individual based solely on an immigration hold request violates Fourth Amendment protections against unreasonable search and seizure.

36.    The Immigration Violations Policy also failed to restrict DCPD from notifying immigration authorities regarding an individual's release date and transferring an individual into the custody of immigration authority. *See* Cal. Gov't Code § 7284.6(a)(1)(C), (a)(4).

37.    The Immigration Violations Policy failed to articulate the Values Act's restriction that joint taskforce operations with federal law enforcement agencies must not have immigration enforcement as their primary purpose. Section 427.3.3 of the Policy provided that DCPD personnel "should not participate in such federal operations as part of any detention team unless it is in direct response to a request for assistance on a temporary basis or for officer safety." However, under the Values Act, a local law enforcement agency can only "conduct[ ]

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

enforcement or investigative duties associated with a joint law enforcement task force" if "[t]he primary purpose of the joint law enforcement task force is not immigration enforcement[.]" *See* Cal. Gov't Code § 7284.6(b)(3)(A).

## VI. DCPD KNEW OR SHOULD HAVE KNOWN THE IMMIGRATION VIOLATIONS POLICY WAS DEFICIENT LONG BEFORE MR. ESCOBAR-LOPEZ'S WRONGFUL ARREST

38.     On or about December 19, 2017, less than one month before the Values Act became effective, immigrant rights' advocates (including counsel in this case) sent DCPD a letter offering detailed guidance on implementing the new law's requirements.  The letter is attached as **Exhibit B**.  In addition to providing an in-depth analysis of the prohibitions in the Values Act, the immigrant rights and civil rights organizations provided a model policy to assist DCPD in complying with the Values Act.  DCPD was thus on notice of requirements under the Values Act almost a year-and-a-half before Mr. Escobar-Lopez was injured by DCPD's unlawful actions.

39.     Daly City and DCPD further should have been aware of the Values Act's requirements given the widespread media attention the Values Act received and through multiple publications and legal guidance that commented on the landmark statute.[5]  In one such publication, dated March 2019, DCPD was named among a group of law enforcement agencies that "use out of date, pre-SB 54 [Values Act] Lexipol immigration enforcement policies, or use post-SB 54 policies that nonetheless include out of date provisions and which omit major new prohibitions."[6]  This publication was covered by several media outlets in the San Francisco Bay Area and, given Daly City's and DCPD's duty to stay informed for the benefit of Daly City's residents, the publication also should have put Daly City and DCPD on notice of the unlawful policy.

---

[5] *See, e.g.*, California Dep't of Justice, *Information Bulletin: Responsibilities of Law Enforcement Under the California Values Act, California TRUST Act, and the California TRUTH Act* (Mar. 28, 2018), https://cpoa.org/wp-content/uploads/2018/04/DOJ-SB54-Bulletin.pdf.

[6] Asian Americans Advancing Justice – Asian Law Caucus et al., *Turning the Golden State into a Sanctuary State: A Report on the Impact and Implementation of the California Values Act (SB 54),* (Mar. 2019), https://www.advancingjustice-alc.org/wp-content/uploads/2019/03/SB54-Report_FINAL.pdf

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

11

## VII.    DEFENDANTS UNLAWFULLY STOPPED, DETAINED, AND ARRESTED MR. ESCOBAR-LOPEZ, AND TRANSFERRED HIM TO ICE

### A.    Mr. Escobar-Lopez's Arrival in the United States

40.    Mr. Escobar-Lopez, originally from El Salvador, arrived in the United States near Rio Grande City, Texas on or about June 17, 2015.  At the time of his arrival, Mr. Escobar-Lopez was under the age of 18, making him an unaccompanied minor under DHS regulations.

41.    On June 19, 2015, DHS issued Mr. Escobar-Lopez a purported Notice to Appear ("NTA")—an ICE charging document, which initiates removal proceedings.  The purported NTA did not include the date and time of the preliminary hearing date or the address of the immigration court, rendering the document facially deficient under DHS regulations and inadequate to provide Mr. Escobar-Lopez with notice of his removal proceedings.

42.    On January 29, 2016, DHS initiated removal proceedings against Mr. Escobar-Lopez at the Newark, New Jersey Immigration Court.  Mr. Escobar-Lopez never received notice of his removal hearing and, therefore, did not appear in these proceedings.

43.    On September 21, 2017, Mr. Escobar-Lopez was ordered removed *in absentia* by an immigration judge in Newark, New Jersey.  Because he never received notice of his removal hearing, Mr. Escobar-Lopez was not aware that he was subject to a removal order, and his removal order was improper.  Indeed, Mr. Escobar-Lopez has vigorously contested the validity of his removal order at the BIA and, now, at the United States Court of Appeals for the Third Circuit.

44.    Notwithstanding the invalidity of his removal order, DHS issued a *civil immigration warrant* for Mr. Escobar-Lopez on the basis of his purported failure to comply with the removal order.

### B.    DCPD Unlawfully Stopped Mr. Escobar-Lopez In Violation of his Rights Under the United States Constitution and California Constitution

45.    Mr. Escobar-Lopez is a devout Catholic and active member of his community. As such, Mr. Escobar-Lopez regularly participates in religious and communal ceremonies, such as weekly church services and baptisms.  On May 11, 2019, Mr. Escobar-Lopez attended one

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

such baptism ceremony with his then girlfriend (now fiancée), a United States Citizen, and members of her family. A relative of Mr. Escobar-Lopez's fiancée was one of several persons baptized at this all-day event, which concluded in the early-evening.

46. By the baptism's conclusion, Mr. Escobar-Lopez's fiancée was too tired to drive. Mr. Escobar-Lopez therefore drove his fiancée, his fiancée's brother, and another of his fiancée's family members back to Daly City, where the family member lived. Upon dropping off the family member, Mr. Escobar-Lopez proceeded home, on a route through the intersection of San Jose Avenue and Goethe Street in San Francisco, California.

47. While on this route, Mr. Escobar-Lopez was careful to comply with all applicable traffic laws. He did not swerve the vehicle or disregard any traffic signs or lights. And the vehicle that Mr. Escobar-Lopez was driving had no outstanding tickets.

48. Despite the absence of any violation of any traffic law—and, therefore, without any justification for stopping Mr. Escobar-Lopez—DCPD Officer Shane Hart put on his patrol car's lights and pulled the vehicle Mr. Escobar-Lopez was driving over near the intersection of San Jose Avenue and Goethe Street in San Francisco, California.

49. Officer Hart's traffic stop violated Mr. Escobar-Lopez's rights under the United States Constitution and the California Constitution because Officer Hart lacked any reasonable, individualized, articulable suspicion that Mr. Escobar-Lopez was involved in any unlawful activity.

**C.    DCPD Unlawfully Prolonged the Stop and Arrested Mr. Escobar-Lopez Based Solely On His Immigration Status**

50. After stopping Mr. Escobar-Lopez's vehicle, a fully-uniformed Officer Hart approached the vehicle and asked Mr. Escobar-Lopez for his driver's license. Mr. Escobar-Lopez did not understand and could not respond to Officer Hart because he does not speak English—facts that his fiancée, who speaks limited English, explained to Officer Hart. Mr. Escobar-Lopez's fiancée offered Officer Hart her identification and explained that Mr. Escobar-Lopez does not have a driver's license.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

51.     Based on this initial interaction, Officer Hart knew or should have known that Mr. Escobar-Lopez was a "limited English proficient" ("LEP") person and required language assistance services.  However, Officer Hart did not provide or offer Mr. Escobar-Lopez language assistance.  Nor did Officer Hart explain to Mr. Escobar-Lopez or his fiancée why he pulled over the vehicle.

52.     Instead, Officer Hart became agitated and continued to question Mr. Escobar-Lopez in English.  In violation of the Values Act and the Fourth Amendment, Officer Hart prolonged the stop to investigate Mr. Escobar-Lopez's immigration status—asking Mr. Escobar-Lopez's fiancée if Mr. Escobar-Lopez was an "immigrant."  Mr. Escobar-Lopez provided Officer Hart with his Salvadorian *Documento Único de Identidad*, an identification card issued to him in El Salvador.

53.     Using Mr. Escobar-Lopez's identification card, Officer Hart conducted a records check.  Officer Hart did not identify any criminal history for Mr. Escobar-Lopez, who has never been arrested, but did find a civil immigration warrant issued in connection with the January 2016 removal order.  This civil immigration warrant was not authorized by any judge or based on any finding of probable cause.  Rather, it was issued by an immigration enforcement agent and based on an improper order of removal for the reasons discussed *supra*, ¶¶ 41-44.

54.     Based on records obtained from DCPD, at least one of the sources that Officer Hart used to check Mr. Escobar-Lopez's history is the National Crime Information Center ("NCIC") database.  NCIC is a nationwide clearinghouse of records operated by the Federal Bureau of Investigation.  NCIC provides direct online access to its computerized index of criminal and immigration-related information for local, state, and federal law enforcement officers, and others nationwide.  The NCIC database clearly identifies and distinguishes between civil and criminal warrants.

55.     NCIC transaction logs produced by DCPD indicate that Mr. Escobar-Lopez was the subject of an outstanding civil immigration warrant.  The warrant was clearly labeled as an "administrative warrant," *i.e.*, a civil immigration warrant, and explained that the warrant was related to removal proceedings.  The NCIC query did not reveal any felony convictions or any

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

14

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

other outstanding warrants. Officer Hart therefore knew, to a certainty, that the only warrant outstanding for Mr. Escobar-Lopez was a civil immigration warrant.

56. During this prolonged detention, DCPD Officer Justin Todaro arrived on the scene in full uniform. Officer Todaro stood on the passenger side of the vehicle, near where Mr. Escobar-Lopez's fiancée was sitting, with his hand on his holstered firearm watching the vehicle and its passengers. Mr. Escobar-Lopez's fiancée asked Officer Todaro multiple times why they were stopped, but Officer Todaro never responded. Officer Todaro also never provided or offered any language assistance to Mr. Escobar-Lopez.

57. After identifying the civil immigration warrant, Officer Hart returned to the vehicle. Officer Hart then arrested Mr. Escobar-Lopez by ordering him out of the vehicle, ordering him to turn around with his hands behind his back, and handcuffing him.

58. Mr. Escobar-Lopez's fiancée started crying and asked why the Officers were arresting Mr. Escobar-Lopez, but the Officers ignored her pleas and did not respond. Mr. Escobar-Lopez was then escorted to the back of Officer Hart's patrol car where he was detained against his will. As Mr. Escobar-Lopez was arrested and detained, he could see his fiancée in shock over Mr. Escobar-Lopez's sudden arrest and crying inside the vehicle where the Officers forced her to remain.

59. The decision to arrest Mr. Escobar-Lopez was made on the basis of his outstanding civil immigration warrant. Documents obtained from DCPD confirm that Mr. Escobar-Lopez was arrested for immigration purposes only. Officer Hart's police report states: "At approximately 2105, I placed ESCOBARLOPEZ under arrest for the immigration warrant." Mr. Escobar-Lopez was never read any of his *Miranda* rights, nor was he advised of his right to counsel. Additionally, Mr. Escobar-Lopez was never told that an outstanding civil immigration warrant had been discovered, or that it was the (sole) reason he was being arrested. Mr. Escobar-Lopez was not and has never been given a citation or charged with any crime or traffic violation in connection with the arrest, or at any other time.

60. Officer Hart and Officer Todaro violated Mr. Escobar-Lopez's rights under the United States Constitution and the California Constitution because they lacked any reasonable,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

15

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

individualized, articulable suspicion that Mr. Escobar-Lopez was involved in unlawful activity when they arrested and detained him on the basis of his civil immigration warrant, which does not meet the probable cause standard required by federal and state constitutional protections.

61. Officer Hart and Officer Todaro also violated the California Values Act because, under the Values Act, California state law enforcement personnel, like Officers Hart and Todaro, are expressly prohibited from performing the functions of an immigration officer and from "making or intentionally participating in arrests based on civil immigration warrants." Cal. Gov't Code § 7284.6(a)(1)(E), (G).

**D. DCPD Engaged In An Unlawful Campaign To Report Mr. Escobar-Lopez To Federal Immigration Authorities and Transfer Him To Their Custody**

62. Once Mr. Escobar-Lopez was unlawfully detained in the back seat of Officer Hart's patrol car, the Officers embarked upon an illegal campaign to report Mr. Escobar-Lopez to federal immigration authorities and coordinate his transfer to federal custody—knowing full well that their actions would cause Mr. Escobar-Lopez to be further detained by ICE and potentially deported from the United States.

63. First, Officer Hart used his cellular phone to make a call from the front seat of his patrol car. Although Mr. Escobar-Lopez did not know who Officer Hart was speaking to and could not understand most of what Officer Hart said during the call, he was able to discern that Officer Hart was confirming Mr. Escobar-Lopez's identity. DCPD records indicate that Officer Hart called ICE Agent Jarvin Li ("ICE Agent Li"), at the DHS detention facility on Sansome Street in San Francisco, California. In violation of the Values Act, Officer Hart proceeded to provide several pieces of personal identifying information to ICE Agent Li, including Mr. Escobar-Lopez's name, physical description, and the names of Mr. Escobar-Lopez's parents (which Officer Hart confirmed with Mr. Escobar-Lopez before making the call).

64. Next, upon providing Mr. Escobar-Lopez's information to ICE Agent Li, Officer Hart received a photograph of Mr. Escobar-Lopez on his cellular phone, which was visible to Mr. Escobar-Lopez from the back seat. DCPD records confirm that ICE Agent Li had sent this photograph to Officer Hart for the purpose of verifying Mr. Escobar-Lopez's identity, which

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

Officer Hart verified by calling ICE Agent Li. Upon information and belief, ICE Agent Li then issued Officer Hart an ICE hold, notification, and transfer request for Mr. Escobar-Lopez.

65.    Upon confirming Mr. Escobar-Lopez's identity with ICE Agent Li, Officer Hart began driving his car away from the scene of the unlawful arrest with Mr. Escobar-Lopez handcuffed in the backseat. Officer Hart did not tell Mr. Escobar-Lopez where he was going or why. DCPD records indicate that Officer Hart coordinated with ICE Agent Li for the transfer of Mr. Escobar-Lopez to ICE custody, and that Officer Hart transported Mr. Escobar-Lopez to the DCPD station *for the sole purpose of allowing ICE Agent Li to take custody of Mr. Escobar-Lopez.* Officer Hart notified ICE Agent Li that Mr. Escobar-Lopez was being taken to the DCPD station, where he would be ready for release into ICE custody. Mr. Escobar-Lopez remained handcuffed in the backseat of the patrol car for the duration of the drive to the station.

66.    Once at the DCPD station, Mr. Escobar-Lopez was kept in handcuffs—purely for immigration enforcement purposes. Based on documents and video footage obtained from DCPD, Mr. Escobar-Lopez was held in a room in a secure, non-public area of the DCPD station.

67.    Mr. Escobar-Lopez was allowed to make a phone call and called his fiancée. Mr. Escobar-Lopez told her that he did not know where he was. Mr. Escobar-Lopez found it emotionally difficult to speak with his fiancée because she was upset and crying.

68.    After a brief conversation, Mr. Escobar-Lopez was informed by Officer Hart that he would soon be picked up by ICE.

69.    Mr. Escobar-Lopez was handed several papers written in English and was not provided with any interpretation services to assist him in understanding the content of the papers.

70.    Shortly thereafter, ICE Agent Li arrived at the DCPD station. DCPD allowed ICE Agent Li into the room where Mr. Escobar-Lopez was detained. ICE Agent Li and the DCPD officer had a brief discussion in English, and then the DCPD officer removed Mr. Escobar-Lopez's handcuffs.

71.    With Officer Hart standing by, ICE Agent Li then searched Mr. Escobar-Lopez and arrested him by placing a chain around his waist, tightly handcuffing his wrists, and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

shackling his ankles. ICE Agent Li escorted Mr. Escobar-Lopez out of the DCPD station and into a white van.

72. ICE Agent Li spoke some Spanish and, when Mr. Escobar-Lopez asked him where he was being taken, ICE Agent Li told him that he was being taken "north of Sacramento." Mr. Escobar-Lopez was terrified as he did not know what that meant or the specific location to which he was being taken, what awaited him there, or how he would be able to get in touch with his family.

73. Officer Hart's communications with ICE Agent Li constituted a clear violation of the Values Act. Under the Values Act, California law enforcement officers like Officer Hart are expressly prohibited from providing personal information to ICE and from performing the functions of an immigration officer.

74. DCPD's actions violated both the Values Act and the TRUTH Act. DCPD personnel held Mr. Escobar-Lopez for immigration enforcement purposes and transferred Mr. Escobar-Lopez to ICE custody, all in violation of the Values Act. In addition, upon information and belief, DCPD failed to provide Mr. Escobar-Lopez with a written consent form in Spanish as required by the TRUTH Act before granting ICE access to him. Also in violation of the TRUTH Act, DCPD personnel failed to: (1) provide Mr. Escobar-Lopez with the ICE hold, notification, and transfer requests they received from ICE; (2) inform Mr. Escobar-Lopez whether they intended to comply with the ICE requests; and (3) provide Mr. Escobar-Lopez with the same notification that was provided to ICE concerning Mr. Escobar-Lopez's release from DCPD custody.

## VIII. MR. ESCOBAR-LOPEZ SUFFERED SERIOUS EMOTIONAL AND FINANCIAL HARM AS A RESULT OF DEFENDANTS' UNLAWFUL CONDUCT

75. As a result of DCPD's unlawful stop, detention, investigation, arrest, sharing of personal information, and transfer of Mr. Escobar-Lopez to ICE custody, Mr. Escobar-Lopez remained in ICE custody for nearly three months—separated from his loved ones under constant threat of deportation—and continues to suffer the consequences of DCPD's wrongful actions.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

**A.      Mr. Escobar-Lopez Remained in ICE Custody For 86 Days**

76.      On May 11, 2019, immediately after DCPD transferred Mr. Escobar-Lopez to ICE custody, he was transported in shackles to the Yuba County Jail in Marysville, California—an ICE detention facility located nearly 150 miles, and a more than two-and-a-half hour drive, from his home.[7] Mr. Escobar-Lopez had no idea where he was being taken, and had no way to inform his loved ones, including his fiancée, of his whereabouts.  He was tightly shackled the entire trip.

77.      At the Yuba County Jail, Mr. Escobar-Lopez was held in a mass incarceration cell along with approximately 100 other people, with no individual privacy and no way of securing what little personal property he was allowed to retain.  He was provided with only two small meals per day and, as a result, was always hungry.  Mr. Escobar-Lopez was never allowed outside the building.  Nor was he allowed to contact his fiancée or any other familial or personal contacts to let them know he was alive, or even where he had been taken.

78.      Mr. Escobar-Lopez was held at the Yuba County Jail until May 13, 2019, when he was abruptly woken up in the middle of the night, handcuffed, and taken to the ICE Field Office in San Francisco, California—another near-150-mile trip, which Mr. Escobar-Lopez again spent shackled in handcuffs—for processing.  Again, Mr. Escobar-Lopez was not told where he was being taken, and had no way of informing his loved ones of his whereabouts.

79.      On May 14, 2019, Mr. Escobar-Lopez was transported yet again to Mesa Verde, an ICE Processing Facility run by a private prison corporation in Bakersfield, California—nearly 300 miles from his home—where he remained for nearly three months.  The long drive to Mesa Verde, which took approximately seven hours, was extremely painful for Mr. Escobar-Lopez as he was forced to remain tightly shackled and was not given any food or the opportunity to use a restroom.  At the Mesa Verde Facility, Mr. Escobar-Lopez was given three meals per day, but the portions were very limited and Mr. Escobar-Lopez remained in a near-constant state of

---

[7] As recently as July 2019, the living conditions at the Yuba County Jail have been described as "inhumane" for reasons such as lack of water in cells, cockroach infestations, and insufficient time out of cells.  *See* Elliot Wailoo, *Immigrant Detainees Begin Hunger Strike in Yuba County Jail for Improved Conditions*, SACRAMENTO BEE (Jul. 4, 2019).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

hunger.  In order to buy food, Mr. Escobar-Lopez worked in the cafeteria—sometimes more than one shift per day—where he would serve food, clean dishes, and clean the kitchen.  Mr. Escobar-Lopez was paid just $0.25 per hour.

80.    During this time, Mr. Escobar-Lopez's fiancée was emotionally distressed and financially burdened by Mr. Escobar-Lopez's detention.  She was forced to start working a second job to pay their bills and to send Mr. Escobar-Lopez money for food and other basic necessities that Mr. Escobar-Lopez was not being provided.  Because Mesa Verde was far from San Francisco and she was forced to work two jobs, Mr. Escobar-Lopez's fiancée could rarely visit him during the two months that he was incarcerated there.  Not only did Mr. Escobar-Lopez rarely see his loved ones in-person, but it was difficult for him to make phone calls to his fiancée and his other family members because he had little money to afford the cost of the phone calls.

81.    In addition, the living conditions at Mesa Verde were unquestionably poor.[8]  The water quality was noticeably substandard and medical care was lacking.  At one point during his incarceration, Mr. Escobar-Lopez developed a skin condition and facial scaling.  He brought this to the attention of medical personnel at Mesa Verde but was ignored.  On another occasion, Mr. Escobar-Lopez had a high fever for an entire week, yet officials at Mesa Verde simply told him that a doctor was not available to see him.

82.    After significant pressure resulting from the public outcry and media attention over his wrongful arrest and transfer, Mr. Escobar-Lopez was finally released at the discretion of ICE on August 5, 2019, just under three months after he was pulled over by Officer Hart.

**B.    Mr. Escobar-Lopez Suffered Serious Harm As a Result of His Unlawful Detention**

83.    As a result of DCPD's actions, Mr. Escobar-Lopez suffered trauma and emotional distress in connection with his arrest and detention by ICE.

---

[8] The California Department of Justice has reported on several deficiencies identified by the ICE Office of Detention Oversight at the Mesa Verde Facility, including with respect to security, food service, and medical care. *See* CAL. DEP'T OF JUSTICE, THE CALIFORNIA DEPARTMENT OF JUSTICE'S REVIEW OF IMMIGRATION DETENTION IN CALIFORNIA, at 30 (2019), https://oag.ca.gov/sites/all/files/agweb/pdfs/publications/immigration-detention-2019.pdf.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
20
Case No. 20-cv-1781

84.     Throughout his detention in ICE custody, Mr. Escobar-Lopez was consumed by the fear that his deportation was imminent.  He still lives with that fear today.

85.     After his release from ICE custody, Mr. Escobar-Lopez experienced difficulty sleeping and anxiety over the fear of being deported to a country he was forced to flee as a child. Mr. Escobar-Lopez and his loved ones are in constant fear that he will face deportation.

86.     Mr. Escobar-Lopez has also experienced great shame and humiliation.  As a condition of his release, Mr. Escobar-Lopez is required to wear a large, uncomfortable ankle monitor.  Mr. Escobar-Lopez is embarrassed and feels stigmatized when members of the public stare at Mr. Escobar-Lopez's ankle monitor and intentionally avoid him as if he were dangerous.

87.     Mr. Escobar-Lopez's detention has also had significant financial consequences. Prior to his unlawful arrest, Mr. Escobar-Lopez worked as a painter making up to $20 per hour. During the period that he was detained, Mr. Escobar-Lopez did not and could not work, and thus lost out on the income that he would have received but for his unlawful detention.

88.     Mr. Escobar-Lopez has also experienced diminished earnings since his release. As a result of his detention and his present need to constantly wear an ankle monitor, Mr. Escobar-Lopez lost his job with his prior employer and, despite a good faith attempt, has been unable to find comparable employment since his release.  He is earning approximately $15 per hour—nearly 25% less than he earned prior to his detention—and now works in a job with less growth potential.

89.     The conditions of Mr. Escobar-Lopez's release further limit his ability to obtain gainful employment.  Mr. Escobar-Lopez is subject to regular home visits from the Intensive Supervision Appearance Program ("ISAP"), which require Mr. Escobar-Lopez to stay at home every Thursday from 8 a.m. to 5 p.m. or risk violating the conditions of his release. Mr. Escobar-Lopez is also required to report to the ISAP office every four weeks—a process that takes nearly all day, since Mr. Escobar-Lopez regularly has to wait for several hours before he is seen.  Further, Mr. Escobar-Lopez is prohibited from traveling more than 75 miles from his home.  These restrictions further limit Mr. Escobar-Lopez's ability to find employment comparable to that which he held prior to his detention.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

**IX.**     <u>DALY CITY AND DCPD ADMIT THEIR WRONGFUL TRANSFER OF MR. ESCOBAR-LOPEZ TO ICE CUSTODY YET DENY HIS ADMINISTRATIVE CLAIM</u>

     **A.**     **Public Outcry Forces Daly City and DCPD to Admit Their Wrongful Transfer of Mr. Escobar-Lopez to ICE Custody**

90.     In July 2019, prominent San Francisco Bay Area news agencies learned of Mr. Escobar-Lopez's unlawful arrest and transfer to ICE custody and began widely reporting on Daly City and DCPD's blatant violations of Mr. Escobar-Lopez's rights under federal and California state law. *See, e.g.*, Liz Kreutz, *Activists fight for release of 21-year-old undocumented artist detained by ICE in Daly City*, ABC 7 NEWS (July 12, 2019); Tatiana Sanchez, *Undocumented immigrant reported by Daly City police to ICE, prompting outcry*, SAN FRANCISCO CHRONICLE (July 17, 2019); Jason Green, *Daly City probing undocumented immigrant's transfer to ICE*, MERCURY NEWS (July 17, 2019).

91.     Only in July 2019—after news agencies started to report on Mr. Escobar-Lopez's mistreatment—did Daly City and DCPD act to remedy their unlawful conduct.

92.     On July 17, 2019, under pressure from an article the *San Francisco Chronicle* ran about Mr. Escobar-Lopez's arrest and transfer earlier that day, Daly City released a press release stating that the Mayor and City Council of Daly City were briefed the day before on the circumstances of his arrest and transfer to ICE.[9] The press statement referred to Mr. Escobar-Lopez's arrest as an "isolated incident," but stated that Daly City was "nonetheless conducting a thorough investigation into all aspects of what led to Mr. Escobar-Lopez's arrest and eventual transfer to Immigration and Customs Enforcement (ICE)" and that "[i]f the investigation uncovers a violation of law or City policy, the City will take appropriate action."

93.     In the same July 17 press release, Daly City further committed to "undertak[e] a review of [DCPD] policies to ensure compliance with SB 54 – the California Values Act," and that DCPD would "be re-training all officers on the City's SB 54-related policies to ensure all our residents and visitors are appropriately protected from unlawful interactions with ICE."

---

[9] *See* City of Daly City, Press Statement: Daly City Responds to ICE Custody of Mr. Escobar-Lopez (July 17, 2019).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

22

94.     On July 19, 2019, DCPD Chief of Police Patrick Hensley issued an administrative directive concerning DCPD's Immigration Violations Policy.[10]  Chief Hensley stated that the policy "is currently being reviewed and may be updated in accordance with SB 54, the California Values Act and the City of Daly City Resolutions preserving the safety of community members, regardless of immigration status."  The administrative directive ordered the following pending completion of the policy review:

> Unless the circumstances present an imminent danger to officer or public safety, members of the Daly City Police Department SHALL NOT, until further notice, communicate with or otherwise assist any federal immigration authority without express prior permission of the Chief of Police, acting in concert with the City Attorney.

95.     This directive against communicating or assisting ICE admitted the inadequacies of DCPD's Immigration Violations Policy, which, by contrast, provided only that DCPD "shall not *normally* undertake immigration investigations or inquire into the citizenship or immigration status of persons encountered during police contacts and/or operations," and permitted DCPD to cooperate with federal immigration officials "when requested."  Immigration Violations Policy Section 427.4.

96.     Days later, on July 22, 2019, the City Council of Daly City proposed and adopted in quick succession Resolution No. 19-111, titled "Re-Affirming Daly City's Commitment to Support and Respect the Rights of All Community Members Irrespective of Immigration Status and Supporting Senate Bill No. 54 – California Values Act."[11]  The resolution provided: "Daly City is committed to complying with the spirit and the letter of SB 54–not only because of the expressed safeguards in SB 54 to protect our immigrant community, but because SB 54 embodies our City's values."  The resolution also stated that Daly City "supports the California Values Act, and affirms its commitment to protecting residents and community members from

---

[10] *See* Daly City Police Department, Memorandum (July 19, 2019).

[11] *See* City Council of Daly City, Meeting Agenda Report: Resolution Re-Affirming Daly City's Commitment to Support and Respect the Rights of All Community Members Irrespective of Immigration Status and Supporting Senate Bill No. 54 – California Values Act (July 22, 2019); City Council of Daly City, Meeting Minutes: Resolution Re-Affirming Daly City's Commitment to Support and Respect the Rights of All Community Members Irrespective of Immigration Status and Supporting Senate Bill No. 54 – California Values Act (July 22, 2019).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

accessing the full range of services to which they are entitled, including law enforcement protection, without fear that the City will use information solicited in such encounters to support immigration enforcement activities."

97.     One week later, on July 29, 2019, Daly City issued a press release responding to an administrative claim filed by Mr. Escobar-Lopez.[12]  Daly City again tried to "assure[ ] the community that this was an isolated incident, and that there is no pattern or practice that shows that the Daly City Police Department directly or indirectly enforces immigration law." Nonetheless, Daly City stated that it was "committ[ed] to review[ing] and revis[ing] the Police Department's policies and their explicit alignment with the California Values Act (SB 54)."

98.     Under public scrutiny, Daly City also sought to advocate for Mr. Escobar-Lopez's release from ICE custody—and, in doing so, admitted that the Officers wrongly transferred Mr. Escobar-Lopez to ICE.  On July 15, 2019, DCPD Police Chief Patrick Hensley wrote a letter to the BIA on behalf of the DCPD, asking for Mr. Escobar-Lopez's release.  Chief Hensley admitted that DCPD "transferred [Mr. Escobar-Lopez] to ICE custody" and requested, on behalf of DCPD, that "Mr. Escobar-Lopez be immediately released from ICE custody while his immigration attorney seeks pathways for deportation relief."  Chief Hensley further articulated DCPD's "full support of Mr. Escobar-Lopez's release, and is reviewing policy concerning the Department's transfer of Mr. Escobar-Lopez to ICE," which "may be contrary to California's state Sanctuary law, SB 54, resulting in the transfer of Mr. Escobar-Lopez into ICE custody."

99.     Similarly, on July 17, 2019, the City Council of Daly City sent a letter to the BIA, urging the release Mr. Escobar-Lopez from ICE custody.  The City Council admitted that the Officers transferred Mr. Escobar-Lopez to ICE custody based solely on a *federal immigration warrant*, and that the Officers knew full well that Mr. Escobar-Lopez had no criminal history upon which they could legitimately have detained him.  Specifically, the City Council explained that DCPD "checked Mr. Escobar-Lopez's name and could find no criminal history, but did see he had a Federal Warrant issued in January 2017, with direction to contact ICE.  The Daly City

[12] *See* City of Daly City, Press Release: Daly City Responds to Asian Law Caucus Government Code Claim and Demand for Change in Daly City Police Department Policies (July 29, 2019).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

Police Department responded to the Federal Warrant and notified ICE and Mr. Escobar-Lopez was subsequently picked up." The City Council further stated: "We support that Mr. Escobar-Lopez should not be in ICE custody, that he belongs with his family and community in the United States, and that his release will ensure due process for Mr. Escobar-Lopez."

**B.      Daly City Wrongfully Denies Mr. Escobar-Lopez's Administrative Claim**

100.    Despite admitting to transferring Mr. Escobar-Lopez to ICE custody, and promising to "investigate" the incident and "take appropriate action," Daly City and DCPD have remarkably refused to acknowledge the violation of Mr. Escobar-Lopez's rights.

101.    On July 29, 2019, while still in ICE custody, Mr. Escobar-Lopez timely filed a claim through counsel herein with Daly City to challenge the unlawful treatment he endured at the hands of DCPD (the "Administrative Claim"). The Administrative Claim asserted, among other things, that DCPD and its officers violated Mr. Escobar-Lopez's rights under the United States Constitution and the California Constitution, and his rights to not be funneled into immigration detention by local law enforcement under the Values Act and his consent and notification rights under the TRUTH Act. The Administrative Claim further asserted that DCPD committed the torts of false imprisonment, intentional infliction of emotional distress, and negligence. The Administrative Claim sought money damages, a signed U Visa certification, I-918 Supplement B Form for Mr. Escobar-Lopez, the replacement of DCPD's Immigration Violations Policy, a review and revision of DCPD's language access policy, the release of any DCPD records to Mr. Escobar-Lopez related to his arrest and transfer to ICE custody, and injunctive and declaratory relief enjoining DCPD from continuing to engage in similar practices and conduct.

102.    Daly City denied Mr. Escobar-Lopez's Administrative Claim by letter, dated September 12, 2019. The letter did not provide any reasoning or analysis, and to this day, Daly City and DCPD have not disclosed the results of the "investigation" they publicly committed to perform. Indeed, even the Officers who so clearly violated Mr. Escobar-Lopez's rights, and caused him such personal trauma and loss, have never been publicly reprimanded and, on information and belief, remain in good standing with the DCPD.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

25

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

**X.      DCPD'S POLICY STILL DOES NOT COMPLY WITH CALIFORNIA LAW**

103.    Following the public criticism it received over Mr. Escobar-Lopez's arrest and detention, DCPD finally replaced the Immigration Violations Policy with a new policy—but did so without providing a meaningful opportunity for feedback from community organizations experienced with the Values Act and TRUTH Act, including counsel in this case.

104.    On August 22, 2019, just one month after DCPD announced it was reviewing its policy, the City Council of Daly City voted to adopt a new Enforcement of Immigration Laws policy (the "Enforcement of Immigration Laws Policy").[13]  The Enforcement of Immigration Laws Policy was obtained from DCPD and is attached as **Exhibit C**.  Upon information and belief, the Enforcement of Immigration Laws Policy remains in effect today.

105.    Although the City Council proclaimed that DCPD "received input from community groups and collaborated with the City Attorney's office and outside counsel to develop a revised comprehensive" policy, the process was rushed and shrouded in secrecy.  Among other irregularities, community advocates, including counsel in this case, received notice of the resolution to adopt the Enforcement of Immigration Laws Policy on Saturday, August 10, 2019—just two days prior to the Monday, August 12, 2019 hearing at which it was to be heard.

106.    The haste with which DCPD adopted the Enforcement of Immigration Laws Policy came at the expense of its compliance with California law.  The Enforcement of Immigration Laws Policy fails to comply with the Values Act and the TRUTH Act:

a.      First, the Enforcement of Immigration Laws Policy continues to allow DCPD to turn over community members to ICE in violation of the Values Act because it includes numerous and potentially ambiguous exceptions to what should be a near-absolute prohibition against notifying and/or transferring individuals to ICE.  The number and ambiguity of these exceptions significantly increase the likelihood that DCPD officers will wrongfully transfer persons to ICE custody in violation of the Values Act.

---

[13] *See* City of Daly City, Agenda (Aug. 12, 2019); City of Daly City, Resolution Confirming the Daly City Police Department's Enforcement of Immigration Law Policy (Aug. 12, 2019).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

b.      Second, the Enforcement of Immigration Laws Policy fails to define "immigration enforcement," which has a specific definition under the Values Act that includes—and thereby prohibits—California state law enforcement officers from engaging in both civil and criminal immigration enforcement. *See* Cal. Gov't Code § 7284.4(f) ("'Immigration enforcement' includes any and all efforts to investigate, enforce, or assist in the investigation or enforcement of any federal civil immigration law, and also includes any and all efforts to investigate, enforce, or assist in the investigation or enforcement of any federal criminal immigration law that penalizes a person's presence in, entry, or reentry to, or employment in, the United States."). The absence of a clear definition significantly increases the likelihood that DCPD officers will believe they are able to engage in criminal immigration enforcement, when such activities are prohibited under the Values Act.

c.      Third, the Enforcement of Immigration Laws Policy also requires DCPD to effectively notify ICE that DCPD has an individual in custody for purposes of reviewing a warrant. Specifically, Section 427(e)(1) of the Enforcement of Immigration Laws Policy requires DCPD to confirm all warrants and immigration transfer requests with the issuing agency, which is simply an end-around the Values Act's prohibition against notifying ICE.

d.      Fourth, the Enforcement of Immigration Laws Policy violates the TRUTH Act because it does not require that a copy of any ICE hold, transfer, or notification request be provided to the individual when it is received. This deficiency undermines the important TRUTH Act requirement of notifying the individual as soon as an ICE detainer request is received so that the individual can seek legal assistance, if needed.

107.    Daly City and DCPD knew or should have known that the Enforcement of Immigration Law Policy was deficient. In fact, counsel in this case provided Daly City with written notification of certain deficiencies in the Enforcement of Immigration Law Policy on August 9, 2019 and August 22, 2019, yet Daly City refused to revise its policy.

108.    Daly City's refusal to correct remaining policy failures, and the rushed and secretive process of which they were the result, cast serious doubt upon Daly City and DCPD's public promises to "take appropriate action." Far from "taking action," Daly City and DCPD

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

continue—despite *admitting the central facts on which Mr. Escobar-Lopez's complaint is based*—to deny liability on the basis that Mr. Escobar-Lopez's incident was "isolated."  Even worse, the DCPD officers who undeniably transgressed Mr. Escobar-Lopez's rights and caused him significant injury have never been publicly reprimanded and, on information and belief, remain in good standing with the DCPD.  Mr. Escobar-Lopez had no choice but to bring this action to hold Defendants accountable for their actions and to prevent their conduct and failed policies from harming him and others like him.

## XI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Fourth Amendment (42 U.S.C. § 1983) – Unreasonable Search and Seizure**

**(Against All Defendants)**

109.   Mr. Escobar-Lopez incorporates by reference each of the allegations in the paragraphs above as though fully set forth herein.

110.   The Fourth Amendment of the United States Constitution guarantees an individual the right to be free from unreasonable searches and seizures.

111.   Federal law preempts state or local police from enforcing federal civil immigration laws and does not grant local law enforcement officials the authority to make civil immigration arrests.  Local law enforcement officers of a State or a State subdivision are not permitted unilaterally to enforce federal immigration laws.  *Arizona*, 567 U.S. at 389.

112.   California state law—the Values Act—also prohibits local law enforcement officers from conducting immigration arrests.  Cal. Gov't Code § 7284.6(a)(1)(E).  In addition, the Values Act prohibits local law enforcement from "[p]erforming the functions of an immigration officer, whether pursuant to Section 1357(g) of Title 8 of the United States Code or any other law, regulation, or policy, whether formal or informal."  Cal. Gov't Code § 7284.6(a)(1)(G).

113.   Neither Daly City nor DCPD have entered into a written agreement with federal immigration authorities pursuant to 8 U.S.C. § 1357(g) to authorize City employees to enforce civil immigration law.  Thus, without an agreement with the United States Attorney General,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

local law enforcement officers cannot arrest or detain individuals based on mere unauthorized presence in the United States.  Mere unauthorized presence in the United States alone is not a criminal matter, and as such, does not give rise to an inference of criminal activity.

114.    Since there is no agreement under 8 U.S.C. § 1357(g)(1) in place in Daly City and the Values Act prohibits such agreements, Defendants and Officers Hart and Todaro did not have authority to enforce federal immigration law under 8 U.S.C. § 1357(g)(1).

115.    At all times, Officers Hart and Todaro, and DOES 1 through 20, wore uniforms and acted under the color of state law.

116.    Officer Hart had no reasonable, individualized, articulable suspicion that Mr. Escobar-Lopez was involved in any unlawful activity when he pulled Mr. Escobar-Lopez over.  Officers Hart and Todaro also had no legal authority to prolong the stop to conduct an immigration enforcement investigation and detain Mr. Escobar-Lopez for immigration enforcement purposes.

117.    Further, Officers Hart and Todaro had no reasonable, individualized, articulable suspicion that Mr. Escobar-Lopez was involved in any unlawful activity when, upon learning that Mr. Escobar-Lopez was the subject of an outstanding federal civil immigration warrant, Officers Hart and Todaro handcuffed him, ordered him to sit in the back of Officer Hart's police car, and transported him to the DCPD station.

118.    When Officers Hart and Todaro, and DOES 1 through 20, ordered, authorized, or physically placed Mr. Escobar-Lopez in handcuffs to prevent him from leaving the scene of the stop or the DCPD station, the officers "seized" him because no reasonable person, including Mr. Escobar-Lopez, would feel that he or she were free to leave after being handcuffed by a uniformed officer.

119.    Mr. Escobar-Lopez was not charged or arrested for any violation of a criminal law.  There was no outstanding criminal warrant for Mr. Escobar-Lopez to justify his detention or arrest.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

29

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

120.    Officers Hart and Todaro, and DOES 1 through 20, seized Mr. Escobar-Lopez without the legal authority to do so.  Their conduct constituted reckless or callous disregard for Mr. Escobar-Lopez's constitutional rights.

121.    As a direct and proximate result of Officers Hart and Todaro, and DOES 1 through 20's actions, as alleged above, Defendants, collectively, and each of them, deprived Mr. Escobar-Lopez of his constitutional rights under the Fourth Amendment of the United States Constitution.

122.    Upon information and belief, Officers Hart and Todaro, and DOES 1 through 20, are vested by law—or by a "custom or usage" having the force of law—with authority to effect arrests and/or ratify or sanction arrests made by other officers.

123.    Defendants Daly City's and DCPD's Immigration Violations Policy permitted the unlawful deprivation of Mr. Escobar-Lopez's constitutional rights under the Fourth Amendment because it failed to prohibit Officers Hart and Todaro, and DOES 1 through 20, from detaining and arresting Mr. Escobar-Lopez on the basis of his immigration status.  Defendants Daly City's and DCPD's policies, training programs, monitoring, and supervision further failed to actually train DCPD officers and employees to handle the frequent, usual, and recurring situations where: (1) a NCIC database query reveals a civil immigration warrant; and (2) an individual is suspected of nothing more than a civil immigration violation.

124.    Defendants knew that Daly City's and DCPD's policies and failure to train adequately made it highly predictable that DCPD officers and employees would engage in conduct that would deprive individuals, including Mr. Escobar-Lopez, of their Fourth Amendment rights under the United States Constitution.

125.    As a direct and proximate result of Defendants' and the Officers' actions, collectively and individually, Mr. Escobar-Lopez suffered damages, including, but not limited to, violation of his constitutional rights, loss of liberty, monetary damages, emotional distress, and physical pain and suffering.

126.    Mr. Escobar-Lopez seeks injunctive relief against all Defendants, enjoining them from continuing to engage in the above-described policies, practices, and conduct violating Mr.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

30

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

Escobar-Lopez's right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, including, but not limited to:  (1) stopping individuals without reasonable suspicion of criminal activity; (2) prolonging stops to conduct an immigration enforcement investigation; (3) detaining or arresting individuals on the basis of a civil immigration warrant;  (4) detaining individuals for immigration enforcement purposes and/or at the request of ICE, (5) adopting and maintaining policies, practices, or procedures that permit DCPD personnel to detain and/or arrest individuals based on their immigration status or a civil immigration warrant; (6) failing to adequately train, monitor, or supervise the agents, employees, or representatives of the DCPD regarding authority to arrest and detain individuals based on a civil immigration warrant; and (7) transferring individuals from DCPD custody to ICE custody, resulting in ICE detention.

127.    Mr. Escobar-Lopez seeks compensatory damages from Defendants Daly City and DCPD and compensatory and punitive damages from DOES 1 through 20 in their individual capacities for violations of Mr. Escobar-Lopez's right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution according to proof, including, but not limited to: (1) stopping individuals without reasonable suspicion of criminal activity; (2) prolonging stops to conduct an immigration enforcement investigation; (3) detaining or arresting individuals on the basis of a civil immigration warrant;  (4) detaining individuals for immigration enforcement purposes and/or at the request of ICE, (5) adopting and maintaining policies, practices, or procedures that permit DCPD personnel to detain and/or arrest individuals based on their immigration status or a civil immigration warrant; (6) failing to adequately train, monitor, or supervise the agents, employees, or representatives of the DCPD regarding authority to arrest and detain individuals based on a civil immigration warrant; and (7) transferring individuals from DCPD custody to ICE custody, resulting in ICE detention.

128.    At all relevant times, the actions and omissions of Defendants and the Officers, and each of them, as set forth above, occurred deliberately, intentionally, knowingly, maliciously, willfully, wantonly, and with conscious and reckless disregard for Mr. Escobar-Lopez's rights, entitling Mr. Escobar-Lopez to an award of punitive damages.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

31

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

## SECOND CLAIM FOR RELIEF

**California Constitution, Art. I, § 13 (Cal. Civil Code § 52.1) – Unreasonable Search and Seizure**

**(Against All Defendants)**

129.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the paragraphs above as though fully set forth herein.

130.    Article I, Section 13 of the California Constitution guarantees an individual the right to be free from unreasonable searches and seizures.

131.    California Civil Code § 52.1, the Bane Act, protects an individual's federal and California state constitutional, and statutory rights from being interfered with through threats, intimidation, or coercion.

132.    Federal law preempts state or local police from enforcing federal civil immigration laws and does not grant local law enforcement officials the authority to make civil immigration arrests.  Local law enforcement officers of a State or a State subdivision are not permitted unilaterally to enforce federal immigration laws.  *Arizona*, 567 U.S. at 389.

133.    California state law—the Values Act—prohibits local law enforcement officers from conducting immigration arrests.  Cal. Gov't Code § 7284.6(a)(1)(E).  In addition, the Values Act prohibits local law enforcement from "[p]erforming the functions of an immigration officer, whether pursuant to Section 1357(g) of Title 8 of the United States Code or any other law, regulation, or policy, whether formal or informal."  Cal. Gov't Code § 7284.6(a)(1)(G).

134.    Neither Daly City nor the DCPD have entered into a written agreement with federal immigration authorities pursuant to 8 U.S.C. § 1357(g) to authorize City employees to enforce civil immigration law.  Thus, without an agreement with the United States Attorney General, local law enforcement officers cannot arrest or detain individuals based on mere unauthorized presence in the United States.  Mere unauthorized presence in the United States alone is not a criminal matter, and as such, does not give rise to an inference of criminal activity.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

32

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

135. Since there is no agreement under 8 U.S.C. § 1357(g)(1) in place in Daly City and the Values Act prohibits such agreements, Defendants did not have authority to enforce federal immigration law under 8 U.S.C. § 1357(g)(1).

136. At all times, Officers Hart and Todaro, and DOES 1 through 20, wore full uniforms and acted under the color of state law.

137. Officer Hart had no reasonable, individualized, articulable suspicion that Mr. Escobar-Lopez was involved in any unlawful activity when he pulled Mr. Escobar-Lopez over. Officers Hart and Todaro also had no legal authority to prolong the stop to conduct an immigration enforcement investigation and detain Mr. Escobar-Lopez for immigration enforcement purposes.

138. Further, Officers Hart and Todaro, and DOES 1 through 20, had no reasonable, individualized, articulable suspicion that Mr. Escobar-Lopez was involved in any unlawful activity when, upon learning that Mr. Escobar-Lopez was the subject of an outstanding federal civil immigration warrant, the officers handcuffed him, ordered him to sit in the back of Officer Hart's police car, and transported him to the DCPD station.

139. When Officers Hart and Todaro, and DOES 1 through 20, ordered, authorized, or physically placed Mr. Escobar-Lopez in handcuffs to prevent him from leaving the scene of the stop or the DCPD station, the officers "seized" him because no reasonable person, including Mr. Escobar-Lopez, would feel that he or she were free to leave after being handcuffed by a uniformed officer.

140. Mr. Escobar-Lopez was not charged or arrested for any violation of a criminal law. There was no outstanding criminal warrant for Mr. Escobar-Lopez to justify his detention or arrest.

141. Officers Hart and Todaro, and DOES 1 through 20, seized Mr. Escobar-Lopez without the legal authority to do so. Their conduct constituted reckless or callous disregard for Mr. Escobar-Lopez's constitutional rights.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

33

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

142.   By threats, coercion, and intimidation, Defendants and the Officers interfered with Mr. Escobar-Lopez's enjoyment of clearly delineated rights secured by the California Constitution, including the right to be free from unlawful arrest or detention.

143.   As a direct and proximate result of Officers Hart and Todaro, and DOES 1 through 20's actions, as alleged above, Defendants, collectively, and each of them, deprived Mr. Escobar-Lopez of his constitutional rights under Article I, Section 13 of the California Constitution.

144.   Upon information and belief, Officers Hart and Todaro, and DOES 1 through 20, are vested by law—or by a "custom or usage" having the force of law—with authority to effect arrests and/or ratify or sanction arrests made by other officers.

145.   Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart, Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

146.   Defendants Daly City's and DCPD's Immigration Violations Policy permitted the unlawful deprivation of Mr. Escobar-Lopez's rights under the California Constitution because it failed to prohibit Officers Hart and Todaro, and DOES 1 through 20, from detaining and arresting Mr. Escobar-Lopez on the basis of his immigration status.  Defendants Daly City's and DCPD's policies, training programs, monitoring, and supervision failed to actually train DCPD officers and employees to handle the frequent, usual, and recurring situations where: (1) a NCIC database query reveals a civil immigration warrant; and (2) an individual is suspected of nothing more than a civil immigration violation.

147.   Defendants knew that Daly City's and DCPD's policies and failure to train adequately made it highly predictable that DCPD officers and employees would engage in conduct that would deprive individuals, including Mr. Escobar-Lopez, of their rights under the California Constitution.

148.   As a direct and proximate result of Defendants' and the Officers' actions, collectively and individually, Mr. Escobar-Lopez suffered damages, including, but not limited to,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

34

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

violation of his constitutional rights, loss of liberty, monetary damages, emotional distress, and physical pain and suffering.

149. Mr. Escobar-Lopez seeks injunctive relief against all Defendants, enjoining them from continuing to engage in the above-described policies, practices, and conduct violating Mr. Escobar-Lopez's right to be free from unreasonable searches and seizures under Article I, Section 13 of the California Constitution, including, but not limited to: (1) stopping individuals without reasonable suspicion of criminal activity; (2) prolonging stops to conduct an immigration enforcement investigation; (3) detaining or arresting individuals on the basis of a civil immigration warrant; (4) detaining individuals for immigration enforcement purposes and/or at the request of ICE, (5) adopting and maintaining policies, practices, or procedures that permit DCPD personnel to detain and/or arrest individuals based on their immigration status or a civil immigration warrant; (6) failing to adequately train, monitor, or supervise the agents, employees, or representatives of the DCPD regarding authority to arrest and detain individuals based on a civil immigration warrant; and (7) transferring individuals from DCPD custody to ICE custody, resulting in ICE detention.

150. Mr. Escobar-Lopez seeks, pursuant to California Civil Code § 52.1, compensatory damages from Defendants Daly City and DCPD and compensatory, statutory, and treble damages from DOES 1 through 20 in their individual capacities for violations of Mr. Escobar-Lopez's right to be free from unreasonable searches and seizures under Article I, Section 13 of the California Constitution according to proof, including, but not limited to: (1) stopping individuals without reasonable suspicion of criminal activity; (2) prolonging stops to conduct an immigration enforcement investigation; (3) detaining or arresting individuals on the basis of a civil immigration warrant; (4) detaining individuals for immigration enforcement purposes and/or at the request of ICE, (5) adopting and maintaining policies, practices, or procedures that permit DCPD personnel to detain and/or arrest individuals based on their immigration status or a civil immigration warrant; (6) failing to adequately train, monitor, or supervise the agents, employees, or representatives of the DCPD regarding authority to arrest and detain individuals

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

35

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

based on a civil immigration warrant; and (7) transferring individuals from DCPD custody to ICE custody, resulting in ICE detention.

151.    At all relevant times, the actions and omissions of Defendants and the Officers, and each of them, as set forth above, occurred deliberately, intentionally, knowingly, maliciously, willfully, wantonly, and with conscious and reckless disregard for Mr. Escobar-Lopez's rights, entitling Mr. Escobar-Lopez to an award of punitive damages.

## THIRD CLAIM FOR RELIEF

### Fourteenth Amendment (42 U.S.C. § 1983) – Due Process

### (Against All Defendants)

152.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

153.    The Fourteenth Amendment of the United States Constitution guarantees individuals due process of law when the state seeks to deprive that individual of his or her liberty.  Due process protects individuals from the arbitrary exercise of government power.

154.    Defendants have an affirmative duty to comply with the Values Act, which vested in Mr. Escobar-Lopez protected liberty interests in, among other things, not being investigated for civil immigration violations by DCPD or its officers, and not being transferred by DCPD or its officers to ICE custody.

155.    Officers Hart and Todaro, and DOES 1 through 20, acting under the color of law, violated Mr. Escobar-Lopez's rights, as guaranteed by the Fourteenth Amendment of the United States, when they failed to comply with the Values Act and unlawfully:  (1) inquired into Mr. Escobar-Lopez's immigration status; (2) arrested Mr. Escobar-Lopez based a civil immigration warrant; (3) detained Mr. Escobar-Lopez for immigration enforcement purposes; (4) provided ICE with Mr. Escobar-Lopez's personal information; (5) performed the functions of immigration officers; (6) notified ICE of the date and location of Mr. Escobar-Lopez's release; and (7) transferred Mr. Escobar-Lopez to ICE custody in violation of Mr. Escobar-Lopez's due process rights, as guaranteed by the Fourteenth Amendment of the United States.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

36

156.    Defendants Daly City's and DCPD's Immigration Violations Policy permitted the unlawful deprivation of Mr. Escobar-Lopez's constitutional rights under the Fourteenth Amendment because it allowed Mr. Escobar-Lopez's protected liberty interests under the Values Act to be deprived without adequate due process.  Defendants Daly City's and DCPD's policies, training programs, monitoring, and supervision further failed to actually train DCPD officers and employees to handle the frequent, usual, and recurring situation where: (1) a NCIC database query reveals a civil immigration warrant; (2) an individual is suspected of nothing more than being the subject of a civil immigration warrant; and (3) ICE seeks to effect a transfer of that individual into ICE custody.  Daly City and DCPD should have trained DCPD officers and employees to not detain, arrest, notify or transfer an individual to ICE based on a civil immigration warrant.

157.    Defendants knew that Daly City's and DCPD's policies and failure to train adequately made it highly predictable that DCPD officers and employees would engage in conduct that would deprive individuals, including Mr. Escobar-Lopez, of their Fourteenth Amendment rights under the United States Constitution.

158.    As a direct and proximate result of Defendants' and the Officers' conduct, collectively and individually, Mr. Escobar-Lopez was deprived of his protected liberty interests.

159.    Mr. Escobar-Lopez seeks injunctive relief against all Defendants, enjoining them from continuing to engage in the above-described policies, practices, and conduct violating Mr. Escobar-Lopez's rights to due process under the Fourteenth Amendment of the United States Constitution including, but not limited to, using DCPD resources for the following immigration enforcement purposes: (1) inquiring into individuals' immigration status; (2) detaining individuals, including on the basis of ICE hold requests; (3) making or intentionally participating in arrests based on civil immigration warrants; (4) providing federal immigration authorities with personal information about individuals when prohibited under the Values Act from doing so; (5) performing the functions of immigration officers; (6) notifying federal immigration authorities of the date, time, and location of release of individuals when prohibited from doing so by the Values Act; (7) transferring individuals to immigration authorities when prohibited from doing

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

37

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

so by the Values Act; and (8) failing to adequately issue and maintain policies, practices, or procedures concerning the Values Act, or to train, monitor, or supervise the agents, employees, or representatives of DCPD regarding the above-mentioned Values Act prohibitions.

160.    Mr. Escobar-Lopez seeks compensatory damages from Defendants Daly City and DCPD and compensatory, incidental, and punitive damages from DOES 1 through 20 in their individual capacities for violations of his rights to due process under the Fourteenth Amendment of the United States Constitution including, but not limited to, using DCPD resources for the following immigration enforcement purposes: (1) inquiring into Mr. Escobar-Lopez's immigration status; (2) detaining Mr. Escobar-Lopez, including on the basis of an ICE hold request; (3) arresting Mr. Escobar-Lopez based on a civil immigration warrant; (4) providing federal immigration authorities with Mr. Escobar-Lopez's personal information when prohibited under the Values Act from doing so; (5) performing the functions of immigration officers; (6) notifying federal immigration authorities of the date and location of Mr. Escobar-Lopez's release when prohibited from doing so by the Values Act; (7) transferring Mr. Escobar-Lopez to immigration authorities when prohibited from doing so by the Values Act; and (8) failing to adequately issue and maintain policies, practices, or procedures concerning the Values Act, or to train, monitor, or supervise the agents, employees, or representatives of DCPD regarding the above-mentioned Values Act prohibitions.

161.    At all relevant times, the actions and omissions of Defendants and the Officers, and each of them, as set forth above, occurred deliberately, intentionally, knowingly, maliciously, willfully, wantonly, and with conscious and reckless disregard for Mr. Escobar-Lopez's rights, entitling Mr. Escobar-Lopez to an award of punitive damages.

**FOURTH CLAIM FOR RELIEF**

**California Constitution Art. I, § 7(a) (Cal. Civil Code § 52.1) – Due Process**

**(Against All Defendants)**

162.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

38

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

163. Article I, Section 7(a) of the California Constitution guarantees individuals due process of law when the state seeks to deprive that individual of his or her liberty. Due process protects individuals from the arbitrary exercise of government power.

164. California Civil Code § 52.1, the Bane Act, protects an individual's federal and California state constitutional, and statutory rights from being interfered with through threats, intimidation, or coercion.

165. Defendants have an affirmative duty to comply with the Values Act, which vested in Mr. Escobar-Lopez protected liberty interests in, among other things, not being investigated for civil immigration violations by DCPD or its officers, and not being transferred by DCPD or its officers to ICE custody.

166. Officers Hart and Todaro, and DOES 1 through 20, acting under the color of law, violated Mr. Escobar-Lopez's due process rights, as guaranteed by Article I, Section 7(a) of the California Constitution, when they failed to comply with the Values Act and unlawfully (1) inquired into Mr. Escobar-Lopez's immigration status; (2) arrested Mr. Escobar-Lopez based a civil immigration warrant; (3) detained Mr. Escobar-Lopez for immigration enforcement purposes, including on the basis of an ICE hold request; (4) provided ICE with Mr. Escobar-Lopez's personal information; (5) performed the functions of immigration officers; (6) notified ICE of the date and location of Mr. Escobar-Lopez's release; and (7) transferred Mr. Escobar-Lopez to ICE custody.

167. At all relevant times, Officers Hart and Todaro, who were armed law enforcement officers, and DOES 1 through 20, commanded Mr. Escobar-Lopez to comply with their requests.

168. Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

169. As a direct and proximate result of Defendants' and the Officers' conduct, collectively and individually, Mr. Escobar-Lopez was deprived of his protected liberty interests.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

39

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

170.    By threats, coercion, and intimidation, Officers Hart and Todaro, and DOES 1 through 20, interfered with Mr. Escobar-Lopez's enjoyment of clearly delineated rights secured by the California Constitution, including the right to due process.

171.    Mr. Escobar-Lopez seeks injunctive relief against all Defendants, enjoining them from continuing to engage in the above-described policies, practices, and conduct violating Mr. Escobar-Lopez's rights to due process under Article I, Section 7(a) of the California Constitution, including, but not limited to, using DCPD resources for the following immigration enforcement purposes: (1) inquiring into individuals' immigration status; (2) detaining individuals, including on the basis of ICE hold requests; (3) making or intentionally participating in arrests based on civil immigration warrants; (4) providing federal immigration authorities with personal information about individuals when prohibited under the Values Act from doing so; (5) performing the functions of immigration officers; (6) notifying federal immigration authorities of the date, time, and location of release of individuals when prohibited from doing so by the Values Act; (7) transferring individuals to immigration authorities when prohibited from doing so by the Values Act; and (8) failing to adequately issue and maintain policies, practices, or procedures concerning the Values Act, or to train, monitor, or supervise the agents, employees, or representatives of DCPD regarding the above-mentioned Values Act prohibitions.

172.    Mr. Escobar-Lopez seeks, pursuant to California Civil Code § 52.1, compensatory damages from Defendants Daly City and DCPD and compensatory, statutory, and treble damages from DOES 1 through 20 in their individual capacities for violations of his due process rights under Article I, Section 7(a) of the California Constitution, including, but not limited to, using DCPD resources for the following immigration enforcement purposes: (1) inquiring into Mr. Escobar-Lopez's immigration status; (2) detaining Mr. Escobar-Lopez, including on the basis of an ICE hold request; (3) arresting Mr. Escobar-Lopez based on a civil immigration warrant; (4) providing federal immigration authorities with Mr. Escobar-Lopez's personal information when prohibited under the Values Act from doing so; (5) performing the functions of immigration officers; (6) notifying federal immigration authorities of the date and location of Mr. Escobar-Lopez's release when prohibited from doing so by the Values Act; (7) transferring

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

40

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

Mr. Escobar-Lopez to immigration authorities when prohibited from doing so by the Values Act; and (8) failing to adequately issue and maintain policies, practices, or procedures concerning the Values Act, or to train, monitor, or supervise the agents, employees, or representatives of DCPD regarding the above-mentioned Values Act prohibitions.

## FIFTH CLAIM FOR RELIEF

### California Government Code § 7284.6 – Violation of the California Values Act

### (Against All Defendants)

173.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the paragraphs above as though fully set forth herein.

174.    Defendants Daly City, DCPD, Officers Hart and Todaro, and DOES 1 through 20 violated Mr. Escobar-Lopez's rights under the Values Act in numerous ways.

175.    First, under the Values Act, a local law enforcement agency may not "[u]se agency or department moneys or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes[.]"  Cal. Gov't Code § 7284.6(a)(1).  The Values Act provides a non-exhaustive list of specific activities that are prohibited in Section 7284.6(a)(1), including, but not limited to: (i) "[i]nquiring into an individual's immigration status"; (ii) "[p]roviding information regarding a person's release date or responding to requests for notification by providing release dates or other information" unless that information or the date and time of release is available to the public, or the response is in accordance with Section 7282.5, which specifies convictions that are exceptions to the prohibition on notifications to ICE; (iii) "[p]roviding personal information . . . about an individual, including, but not limited to, the individual's home address or work address unless that information is available to the public"; (iv) "[m]aking or intentionally participating in arrests based on civil immigration warrants"; (v) "[p]erforming the functions of an immigration officer, whether pursuant to Section 1357(g) of Title 8 of the United States Code or any other law, regulation, or policy, whether formal or informal"; and (vi) "detain[ing] . . . persons for immigration enforcement purposes" including "on the basis of a hold request."  Cal. Gov't Code § 7284.6(a)(1)(A)-(E), (G).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

176.    Defendants Daly City, DCPD, Officers Hart and Todaro, and DOES 1 through 20 violated Section 7284.6(a)(1) of the Values Act in at least the following ways:

a.    Officer Hart violated the Values Act when he purposefully inquired into Mr. Escobar-Lopez's immigration status by asking whether he was an "immigrant";

b.    Officer Hart violated the Values Act when he used DCPD resources to investigate Mr. Escobar-Lopez for immigration enforcement purposes and performed the functions of an immigration officer by using DCPD computers and/or systems to check Mr. Escobar-Lopez's name in the NCIC database for outstanding civil immigrations warrants;

c.    Officer Hart violated the Values Act when he investigated Mr. Escobar-Lopez for immigration enforcement purposes by communicating several pieces of personal information to ICE, including Mr. Escobar-Lopez's name, physical description, and the names of Mr. Escobar-Lopez's parents;

d.    Officer Hart violated the Values Act when he provided information for immigration enforcement purposes by notifying ICE that he was taking Mr. Escobar-Lopez to the DCPD station where he would be ready for transfer to ICE custody.  The Values Act prohibited notification of ICE because Mr. Escobar-Lopez had no prior convictions and had never appeared before a magistrate pursuant to California Penal Code Section 872 due to the fact that he was never charged with any crime;

e.    Officers Hart and Todaro violated the Values Act when they detained Mr. Escobar-Lopez for immigration enforcement purposes, including on the basis of an ICE hold request;

f.    Officers Hart and Todaro violated the Values Act when they arrested Mr. Escobar-Lopez pursuant to a civil immigration warrant;

g.    Officers Hart and Todaro violated the Values Act when they used DCPD resources to detain Mr. Escobar-Lopez for immigration enforcement purposes;

h.    Officers Hart and Todaro violated the Values Act when they used DCPD resources for immigration enforcement purposes by performing the functions of an immigration officer.  They performed the functions of an immigration officer by detaining Mr. Escobar-Lopez

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

42

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

to investigate and inquire into his immigration status, and by arresting Mr. Escobar-Lopez pursuant to a civil immigration warrant.

177.    Second, under the Values Act, a local law enforcement agency may not "[t]ransfer an individual to immigration authorities unless authorized by a judicial warrant or judicial probable cause determination, or in accordance with Section 7282.5." Cal. Gov't Code § 7284.6(a)(4).

178.    Officers Hart and Todaro, and DOES 1 through 20, violated Section 7284.6(a)(4) of the Values Act when they used DCPD resources for immigration enforcement purposes by allowing ICE to enter a secure non-public area of the DCPD station to take custody of Mr. Escobar-Lopez, thus effectuating a transfer.  Mr. Escobar-Lopez did not fall into one of the exceptions listed in Section 7282.5, and there is no evidence a judicial warrant or judicial probable cause determination was made.

179.    Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

180.    Defendants Daly City, DCPD, and DOES 1 through 20 violated the Values Act by developing, adopting, and enacting the Immigration Violations Policy, which failed to comply with the Values Act.  Defendants Daly City, DCPD, and DOES 1 through 20 further violated the Values Act by developing, adopting, and enacting the Enforcement of Immigration Laws Policy, which continues to violate the Values Act.  Defendants Daly City's and DCPD's policies, training programs, monitoring, and supervision failed to adequately train and require its officers, employees, and agents to comply with their obligations and duties under the Values Act.

181.    As a direct and proximate result of Defendants' and the Officers' actions, collectively and individually, Mr. Escobar-Lopez suffered damages, including, but not limited to, damages due to violations of his statutory rights, loss of liberty, financial losses, and personal injury, including, but not limited to, emotional distress and physical pain and suffering.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

43

182.    Mr. Escobar-Lopez seeks injunctive and declaratory relief against all Defendants. Mr. Escobar-Lopez seeks a declaratory judgment that the Immigration Violations Policy failed to comply with the Values Act, and that the Enforcement of Immigration Laws Policy fails to comply with the Values Act.  Mr. Escobar-Lopez seeks injunctive relief enjoining Defendants from continuing to engage in the above-described policies, practices, and conduct of violating Mr. Escobar-Lopez's rights under the Values Act, including, but not limited to, using their resources for the following immigration enforcement purposes: (1) inquiring into individuals' immigration status; (2) providing federal immigration authorities with personal information about individuals when prohibited under the Values Act from doing so; (3) arresting individuals based on a civil immigration warrant; (4) detaining individuals for immigration enforcement purposes, including on the basis of ICE hold requests; (5) performing the functions of immigration officers; (6) notifying federal immigration authorities of the date and time of release of individuals when prohibited from doing so by the Values Act; (7) transferring individuals to immigration authorities when prohibited from doing so by the Values Act; and (8) failing to adequately issue and maintain policies, practices, or procedures concerning the Values Act, or to train, monitor, or supervise the agents, employees, or representatives of DCPD regarding the above-mentioned Values Act prohibitions.

183.    Mr. Escobar-Lopez seeks compensatory damages from Defendants Daly City and DCPD and compensatory damages and punitive damages from DOES 1 through 20 in their individual capacities for violations of Mr. Escobar-Lopez's rights under the Values Act, including, but not limited to, using DCPD resources for the following immigration enforcement purposes:  (1) inquiring into Mr. Escobar-Lopez's immigration status; (2) arresting Mr. Escobar-Lopez based on a civil immigration warrant; (3) providing federal immigration authorities with Mr. Escobar-Lopez's personal information when prohibited under the Values Act from doing so; (4) performing the functions of immigration officers; (5) notifying ICE of the date and location of Mr. Escobar-Lopez's release when prohibited from doing so by the Values Act; (6) transferring Mr. Escobar-Lopez to ICE when prohibited from doing so by the Values Act; (7) detaining Mr. Escobar-Lopez for immigration purposes, including on the basis of an ICE hold

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

44

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

request; and (8) failing to adequately issue and maintain policies, practices, or procedures concerning the Values Act, or to train, monitor, or supervise the agents, employees, or representatives of DCPD regarding the above-mentioned Values Act prohibitions.

184.    At all relevant times herein, the actions and omissions of Defendants and Officers Hart and Todaro, and each of them, as set forth above, occurred deliberately, intentionally, knowingly, maliciously, willfully, wantonly, and with conscious and reckless disregard for Mr. Escobar-Lopez's rights, entitling Mr. Escobar-Lopez to an award of punitive damages.

## SIXTH CLAIM FOR RELIEF

### California Government Code § 7283.1 – Violation of the TRUTH Act

### (Against All Defendants)

185.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the paragraphs above as though fully set forth herein.

186.    The TRUTH Act requires local law enforcement agencies, prior to any interview between ICE and an individual in custody of the local law enforcement agency, to provide the individual with a written consent form that explains the purpose of the interview, that the interview is voluntary, and that the individual may decline the interview.  The TRUTH Act further requires that the written consent form be available in English, Spanish, and other languages.  Cal. Gov't Code § 7283.1(a).

187.    The TRUTH Act also requires that a local law enforcement agency provide a copy of any ICE hold, notification, or transfer request received to the individual at issue in the request.  In addition, the local law enforcement agency is required to inform the individual whether or not it "intends to comply with the request."  Further, if "a local law enforcement agency provides ICE with notification that an individual is being, or will be, released on a certain date, the local law enforcement agency" is required to  "promptly provide the same notification in writing to the individual and to his or her attorney or to one additional" designee.  Cal. Gov't Code § 7283.1(b).

188.    Officers Hart and Todaro and DOES 1 through 20 violated the TRUTH Act by: (1) failing to provide Mr. Escobar-Lopez with a written consent form in Spanish that explained

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

45

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

the purpose of his meeting with ICE, that the interview was voluntary, and that Mr. Escobar-Lopez could decline the interview, prior to granting ICE access to him; (2) failing to provide Mr. Escobar-Lopez with copies of the ICE hold, notification, and transfer requests that they received regarding Mr. Escobar-Lopez; (3) failing to inform Mr. Escobar-Lopez whether they intended to comply with the ICE requests; and (4) failing to provide Mr. Escobar-Lopez with the same notification that was provided to ICE concerning Mr. Escobar-Lopez's release from DCPD custody.

189.    Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

190.    Defendants Daly City's and DCPD's Enforcement of Immigration Laws Policy violates the TRUTH Act as it fails to require that a copy of any ICE hold, transfer, or notification request be provided to the individual when it is received.

191.    As a direct and proximate result of Defendants' actions, collectively and individually, Mr. Escobar-Lopez suffered damages, including, but not limited to, damages due to violations of his statutory rights, loss liberty, financial losses, and personal injury including, but not limited to, emotional distress and physical pain and suffering.

192.    Mr. Escobar-Lopez seeks injunctive and declaratory relief against all Defendants. Mr. Escobar-Lopez seeks a declaratory judgment that the Enforcement of Immigration Laws Policy fails to comply with the TRUTH Act.  Mr. Escobar-Lopez seeks injunctive relief enjoining Defendants from continuing to engage in the above-described policy, practice, and conduct of violating Mr. Escobar-Lopez's rights under the TRUTH Act, including, but not limited to:  (1) failing to provide an individual with a written consent form before granting ICE access to that individual; (2) failing to provide an individual with copies of any ICE hold, notification, or transfer requests that are received regarding that individual; (3) failing to inform an individual subject to an ICE request whether they intend to comply with the ICE request; and

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

46

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

(4) failing to provide an individual with a notification that was provided to ICE concerning that individual's release from law enforcement custody.

193.    Mr. Escobar-Lopez seeks compensatory damages from Defendants Daly City and DCPD in their official capacities and compensatory and punitive damages from DOES 1 through 20 for violation of Mr. Escobar-Lopez's rights under the TRUTH Act, including, but not limited to, failing to:  (1) provide Mr. Escobar-Lopez with the required written consent form before granting ICE access to him; (2) provide Mr. Escobar-Lopez with copies of the ICE hold, notification, and transfer requests that they received regarding Mr. Escobar-Lopez; (3) inform Mr. Escobar-Lopez whether they intended to comply with the ICE requests; and (4) provide Mr. Escobar-Lopez with the same notification that was provided to ICE concerning Mr. Escobar-Lopez's release from DCPD custody.

194.    At all relevant times herein, the actions and omissions of Defendants and Officers Hart and Todaro, and each of them, as set forth above, occurred deliberately, intentionally, knowingly, maliciously, willfully, wantonly, and with conscious and reckless disregard for Mr. Escobar-Lopez's rights, entitling Mr. Escobar-Lopez to an award of punitive damages.

## SEVENTH CLAIM FOR RELIEF

**Cal. Gov't Code § 7284.6 (Cal. Civil Code § 52.1) – Violation of the California Values Act**

**(Against All Defendants)**

195.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth here.

196.    California Civil Code § 52.1, the Bane Act, protects an individual's federal and California state constitutional, and statutory rights from being interfered with through threats, intimidation, or coercion.

197.    At all relevant times, Officers Hart and Todaro, who were armed law enforcement officers, and DOES 1 through 20, commanded Mr. Escobar-Lopez to comply with their requests.

198.    Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

47

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

199.    By threats, coercion, and intimidation, Defendants and Officers Hart and Todaro interfered with Mr. Escobar-Lopez's enjoyment of his clearly delineated statutory rights secured by the Values Act.

200.    Officers Hart and Todaro, and DOES 1 through 20, violated the Values Act when they used DCPD resources to effect the following immigration enforcement activities: (1) inquiring into Mr. Escobar-Lopez's immigration status; (2) arresting Mr. Escobar-Lopez based on a civil immigration warrant; (3) detaining Mr. Escobar-Lopez, including on the basis of an ICE hold request; (4) providing ICE with Mr. Escobar-Lopez's personal information; (5) performing the functions of immigration officers; (6) notifying ICE of the date and location of Mr. Escobar-Lopez's release; and (7) transferring Mr. Escobar-Lopez to ICE.  Officers Hart and Todaro, and DOES 1 through 20, exposed Mr. Escobar-Lopez to an unreasonable risk of foreseeable harm at the hands of ICE, which resulted in Mr. Escobar-Lopez's nearly three-month detention.

201.    Defendants Daly City, DCPD, and DOES 1 through 20 further violated Mr. Escobar-Lopez's rights under the Values Act by developing, adopting, and enacting the Immigration Violations Policy, which failed to comply with the Values Act.  Defendants Daly City, DCPD, and DOES 1 through 20 further violated Mr. Escobar-Lopez's rights under the Values Act by developing, adopting, and enacting the Enforcement of Immigration Laws Policy, which continues to violate the Values Act.  Defendants Daly City's and DCPD's policies, training programs, monitoring, and supervision failed to adequately train and require its officers, employees, and agents to comply with their obligations and duties under the Values Act.

202.    As a direct and proximate result of Defendants' conduct, collectively and individually, Mr. Escobar-Lopez was deprived of his statutory rights under the Values Act.

203.    Mr. Escobar-Lopez seeks declaratory relief against Defendants pursuant to California Civil Code § 52.1.  Mr. Escobar-Lopez seeks a declaratory judgment that the Immigration Violations Policy failed to comply with the Values Act, and that the Enforcement of

Immigration Laws Policy fails to comply with the Values Act.  Mr. Escobar-Lopez seeks injunctive relief pursuant to California Civil Code § 52.1 against all Defendants enjoining them from continuing to engage in the above-described policies, practices, and conduct interfering with the exercise and enjoyment of Mr. Escobar-Lopez's statutory rights under the Values Act, according to proof and including, but not limited to, using DCPD resources to effect the following immigration enforcement activities:

a. Purposefully asking Mr. Escobar-Lopez whether he was an "immigrant";

b. Checking Mr. Escobar-Lopez's name in the NCIC database to investigate his immigration status and to search for outstanding civil immigration warrants;

c. Communicating several pieces of personal information to ICE, including Mr. Escobar-Lopez's name, physical description, and the names of Mr. Escobar-Lopez's parents;

d. Notifying ICE of where Mr. Escobar-Lopez was being taken and where he would be ready for transfer, despite the fact that Mr. Escobar-Lopez had no prior convictions and had never appeared before a magistrate pursuant to California Penal Code Section 872;

e. Arresting Mr. Escobar-Lopez pursuant to an outstanding civil immigration warrant;

f. Detaining Mr. Escobar-Lopez, including on the basis of an ICE hold request;

g. Performing the functions of immigration officers by detaining Mr. Escobar-Lopez to investigate and inquire into his immigration status, and by arresting Mr. Escobar-Lopez pursuant to a civil immigration warrant;

h. Allowing ICE to enter a secure, non-public area of the DCPD station to effect Mr. Escobar-Lopez's transfer into ICE custody.

204. Mr. Escobar-Lopez seeks, pursuant to California Civil Code § 52.1, compensatory damages from Defendants Daly City and DCPD and compensatory, statutory, and treble damages from DOES 1 through 20 in their individual capacities for violations of Mr. Escobar-Lopez's statutory rights under the Values Act, according to proof and including, but not limited to, using DCPD resources to effect the following immigration enforcement activities:

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

49

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

a.    Purposefully asking Mr. Escobar-Lopez whether he was an "immigrant";

b.    Checking Mr. Escobar-Lopez's name in the NCIC database to investigate his immigration status and to search for outstanding civil immigration warrants;

c.    Communicating several pieces of personal information to ICE, including Mr. Escobar-Lopez's name, physical description, and the names of Mr. Escobar-Lopez's parents;

d.    Notifying ICE of where Mr. Escobar-Lopez was being taken and where he would be ready for transfer, despite the fact that Mr. Escobar-Lopez had no prior convictions and had never appeared before a magistrate pursuant to California Penal Code Section 872;

e.    Arresting Mr. Escobar-Lopez pursuant to an outstanding civil immigration warrant;

i.    Detaining Mr. Escobar-Lopez, including on the basis of an ICE hold request;

f.    Performing the functions of immigration officers by detaining Mr. Escobar-Lopez to investigate and inquire into his immigration status, and by arresting Mr. Escobar-Lopez pursuant to a civil immigration warrant;

g.    Allowing ICE to enter a secure, non-public area of the DCPD station to effect his transfer into ICE custody.

## EIGHTH CLAIM FOR RELIEF

**Cal. Gov't Code § 7283.1 (Cal. Civil Code § 52.1) – Violation of the TRUTH Act**

**(Against All Defendants)**

205.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth here.

206.    California Civil Code § 52.1, the Bane Act, protects an individual's federal and California state constitutional, and statutory rights from being interfered with through threats, intimidation, or coercion.

207.    At all relevant times, Officers Hart and Todaro, who were armed law enforcement officers, and DOES 1 through 20, commanded Mr. Escobar-Lopez to comply with their requests.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

50

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

208.    Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

209.    By threats, coercion, and intimidation, Officers Hart and Todaro, and DOES 1 through 20, prevented Mr. Escobar-Lopez from exercising his clearly delineated statutory rights under the TRUTH Act, including the right to consent to ICE access when he was in DCPD's custody.

210.    Defendants Daly City's and DCPD's Enforcement of Immigration Laws Policy violates the TRUTH Act as it fails to require that a copy of any ICE hold, transfer, or notification request be provided to the individual when it is received.

211.    As a direct and proximate result of Defendants' and the Officers' conduct, collectively and individually, Mr. Escobar-Lopez was deprived of his statutory rights under the TRUTH Act.

212.    Mr. Escobar-Lopez seeks injunctive and declaratory relief against Defendants. Mr. Escobar-Lopez seeks a declaratory judgment that the Enforcement of Immigration Laws Policy fails to comply with the TRUTH Act.  Mr. Escobar-Lopez seeks injunctive relief enjoining Defendants from continuing to engage in the above-described policy, practice, and conduct of violating Mr. Escobar-Lopez's rights under the TRUTH Act, including, but not limited to:  (1) failing to provide an individual with a written consent form before granting ICE access to that individual; (2) failing to provide an individual with copies of any ICE hold, notification, or transfer requests that are received regarding that individual; (3) failing to inform an individual subject to an ICE request whether they intend to comply with the ICE request; and (4) failing to provide an individual with a notification that was provided to ICE concerning that individual's release from law enforcement custody.

213.    Mr. Escobar-Lopez seeks, pursuant to California Civil Code § 52.1, compensatory damages from Defendants Daly City and DCPD and compensatory, statutory, and treble damages from DOES 1 through 20 in their individual capacities for violations of Mr. Escobar-

Lopez's statutory rights under the TRUTH Act, according to proof and including, but not limited to failing to: (1) provide Mr. Escobar-Lopez with the required written consent form before granting ICE access to him; (2) provide Mr. Escobar-Lopez with copies of the ICE hold, notification, and transfer requests that they received regarding Mr. Escobar-Lopez; (3) inform Mr. Escobar-Lopez whether they intended to comply with the ICE requests; and (4) provide Mr. Escobar-Lopez with the same notification that was provided to ICE concerning Mr. Escobar-Lopez's release from DCPD custody.

## NINTH CLAIM FOR RELIEF

### False Imprisonment

### (Against All Defendants)

214.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

215.    False imprisonment is the unlawful violation of the personal liberty of another, and occurs where there is the nonconsensual, intentional confinement of a person without lawful privilege.

216.    Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

217.    Mr. Escobar-Lopez seeks compensatory and incidental damages from Defendants Daly City and DCPD, and compensatory and punitive damages from DOES 1 through 20 in their individual capacities, for inflicting personal injury on him by subjecting him to false arrest and imprisonment according to proof by acts, including, but not limited to: (1) unlawfully prolonging the stop to investigate Mr. Escobar-Lopez's immigration status; (2) detaining and arresting Mr. Escobar-Lopez based on a civil immigration warrant even though such warrants do not provide probable cause; (3) detaining Mr. Escobar-Lopez in handcuffs at the DCPD station; and (4) transferring custody of Mr. Escobar-Lopez to ICE, which continued to detain him for almost three months.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

52

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

218. The wrongful acts of Defendants and Officers Hart and Todaro were done maliciously, oppressively, fraudulently, and in conscious disregard of the rights, safety, and health of Mr. Escobar-Lopez and others. Mr. Escobar-Lopez is entitled to punitive and exemplary damages to deter such behavior by Defendants and others in the future.

## TENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

219. Mr. Escobar-Lopez incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

220. Officers Hart and Todaro, and DOES 1 through 20, engaged in outrageous conduct that goes beyond all possible bounds of decency and is intolerable in a civilized community—especially a community that has adopted the protections of the Values Act and TRUTH Act—by and through conduct, including, but not limited to: (1) arresting and detaining Mr. Escobar-Lopez without reasonable suspicion or probable cause, which included handcuffing him without explanation, placing him in the back of a patrol car, and taking him to a secure non-public room in the DCPD station; (2) contacting ICE to confirm Mr. Escobar-Lopez's identity, to inform ICE of Mr. Escobar-Lopez's whereabouts, and to facilitate the transfer of Mr. Escobar-Lopez to ICE, which subsequently detained him for almost three months; and (3) failing to provide Mr. Escobar-Lopez with an interpreter despite his apparent limited English proficiency.

221. As a result of Defendants' and the Officers' outrageous conduct, Mr. Escobar-Lopez has and continues to suffer severe emotional distress, including, but not limited to, anxiety, worry, humiliation, shame, and fear. This includes, but is not limited to: the fear of being deported to El Salvador; humiliation for being arrested and detained in front of his then girlfriend (now fiancée) and for spending almost three months in an ICE detention facility; humiliation for wearing an ankle monitor after his release under the ISAP program; and anxiety, shock, worry, and shame for being falsely arrested, detained, and handcuffed without probable cause or reasonable suspicion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

53

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

222.    Upon information and belief, the conduct of Officers Hart and Todaro, and DOES 1 through 20, was intentional and malicious, and done to cause Mr. Escobar-Lopez emotional distress.

223.    Alternatively, Officers Hart and Todaro, and DOES 1 through 20, acted with reckless disregard to the high likelihood that Mr. Escobar-Lopez would suffer emotional distress. Officers Hart and Todaro, and DOES 1 through 20, knew that emotional distress was the probable result of their conduct, or gave little or no thought to the probable effects of their conduct.

224.    The outrageous conduct of Officers Hart and Todaro, and DOES 1 through 20, was a substantial factor in causing Mr. Escobar-Lopez's severe emotional distress.

225.    Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

226.    Mr. Escobar-Lopez seeks compensatory damages from Defendants Daly City and DCPD and compensatory and punitive damages from DOES 1 through 20 in their individual capacities.

227.    The wrongful acts of Defendants and Officers Hart and Todaro were done maliciously, oppressively, fraudulently, and in conscious disregard of the rights, safety, and health of Mr. Escobar-Lopez and others.  Mr. Escobar-Lopez is entitled to punitive and exemplary damages to deter such behavior by Defendants and others in the future.

228.    Officers Hart and Todaro, and DOES 1 through 20, in the course of their outrageous conduct, were not exercising their legal rights or protecting their economic interests. Nor was their conduct consistent with community standards.  Officers Hart and Todaro, and DOES 1 through 20, did not have a good-faith belief that they had a legal right to engage in such outrageous conduct.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

54

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

**ELEVENTH CLAIM FOR RELIEF**

**Negligence Per Se – California Values Act (Cal. Gov't Code § 7284.6)**

**(Against All Defendants)**

229. Mr. Escobar-Lopez incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

230. Under California Evidence Code Section 669(a), the failure of an individual to exercise due care is presumed if he or she violated a statute of a public entity; the violation proximately caused injury to the person; the injury resulted from an occurrence of the nature which the statute was designed to prevent; and the person suffering the injury was one of the class of persons for whose protection the statute was adopted.

231. California Government Code Section 815.6 provides, "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

232. The Values Act protects the people of California by preventing state and local agencies (including, municipal police departments) from assisting federal immigration enforcement activities and transferring Californians to federal immigration custody without their consent. As a California resident and member of the immigrant community, Mr. Escobar-Lopez falls within the class of persons the Values Act was designed to protect.

233. Officers Hart and Todaro, and DOES 1 through 20, violated the Values Act when they used DCPD resources to effect the following immigration enforcement activities: (1) inquiring into Mr. Escobar-Lopez's immigration status; (2) arresting Mr. Escobar-Lopez based on a civil immigration warrant; (2) detaining Mr. Escobar-Lopez, including on the basis of an ICE hold request; (4) providing ICE with Mr. Escobar-Lopez's personal information; (5) performing the functions of immigration officers; (6) notifying ICE of the date and location of Mr. Escobar-Lopez's release; and (7) transferring Mr. Escobar-Lopez to ICE. Officers Hart and Todaro, and DOES 1 through 20, exposed Mr. Escobar-Lopez to an unreasonable risk of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

55

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

foreseeable harm at the hands of ICE, which resulted in Mr. Escobar-Lopez's nearly three-month detention.

234.    Defendants Daly City, DCPD, and DOES 1 through 20 violated Mr. Escobar-Lopez's rights under the Values Act by developing, adopting, and enacting the Immigration Violations Policy, which failed to comply with the Values Act.  Defendants Daly City, DCPD, and DOES 1 through 20 further violated Mr. Escobar-Lopez's rights under the Values Act by developing, adopting, and enacting the Enforcement of Immigration Laws Policy, which continues to violate the Values Act.  Defendants Daly City's and DCPD's policies, training programs, monitoring, and supervision failed to adequately train and require its officers, employees, and agents to comply with their obligations and duties under the Values Act.

235.    Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

236.    In addition, the Values Act imposed a mandatory duty on Defendants Daly City and DCPD and its officials, employees, and agents to protect immigrants such as Mr. Escobar-Lopez.  Defendants Daly City and DCPD failed to follow and carry out their mandatory duties under the Values Act when they violated the statute in numerous ways and failed to properly implement and enforce the Values Act through the adoption and maintenance of policies in accordance with the Values Act.  Defendants Daly City and DCPD may be held directly liable pursuant to California Government Code Section 815.6.

237.    The conduct of Defendants and Officers Hart and Todaro directly and proximately caused physical, economic, and emotional harm to Mr. Escobar-Lopez.

238.    Mr. Escobar-Lopez seeks declaratory relief against Defendants pursuant to California Civil Code § 52.1.  Mr. Escobar-Lopez seeks a declaratory judgment that the Immigration Violations Policy failed to comply with the Values Act, and that the Enforcement of Immigration Laws Policy fails to comply with the Values Act.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

56

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

239.    Mr. Escobar-Lopez seeks compensatory damages from Defendants Daly City and DCPD and compensatory and punitive damages from DOES 1 through 20 for negligently violating the Values Act.

240.    The wrongful acts of Defendants and Officers Hart and Todaro were done maliciously, oppressively, fraudulently, and in conscious disregard of the rights, safety, and health of Mr. Escobar-Lopez and others.  Mr. Escobar-Lopez is entitled to punitive and exemplary damages to deter such behavior by Defendants and others in the future.

**TWELFTH CLAIM FOR RELIEF**

**Negligence Per Se – California TRUTH Act (Cal. Gov't Code § 7283.1)**

**(Against All Defendants)**

241.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

242.    Under California Evidence Code Section 669(a), the failure of an individual to exercise due care is presumed if he or she violated a statute of a public entity; the violation proximately caused injury to the person; the injury resulted from an occurrence of the nature which the statute was designed to prevent; and the person suffering the injury was one of the class of persons for whose protection the statute was adopted.

243.    Pursuant to California Government Code Section 815.6, "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

244.    The TRUTH Act was enacted to protect Californian immigrants from local law enforcement entanglement with federal immigration enforcement.  As a California resident and member of the immigrant community, Mr. Escobar-Lopez falls within the class of persons the TRUTH Act was designed to protect.

245.    Officers Hart and Todaro, and DOES 1 through 20, violated the TRUTH Act by: (1) failing to provide Mr. Escobar-Lopez with a written consent form in Spanish before granting

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

57

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

ICE access to him; (2) failing to provide Mr. Escobar-Lopez with copies of the ICE hold, notification, and transfer requests that they received regarding Mr. Escobar-Lopez; (3) failing to inform Mr. Escobar-Lopez whether they intended to comply with the ICE requests; and (4) failing to provide Mr. Escobar-Lopez with the same notification that was provided to ICE concerning Mr. Escobar-Lopez's release from DCPD custody.

246. Defendants Daly City's and DCPD's Enforcement of Immigration Laws Policy violates the TRUTH Act as it fails to require that a copy of any ICE hold, transfer, or notification request be provided to the individual when it is received.

247. Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

248. In addition, the TRUTH Act imposed a mandatory duty on Defendants Daly City and DCPD and its officials, employees, and agents, to protect immigrants such as Mr. Escobar-Lopez. Defendants Daly City and DCPD failed to follow and carry out their mandatory duties under the TRUTH Act when they violated the statute and failed to properly implement and enforce the TRUTH Act through the adoption and maintenance of policies in accordance with the TRUTH Act. Defendants Daly City and DCPD may be held directly liable pursuant to California Government Code Section 815.6.

249. The conduct of Defendants and Officers Hart and Todaro directly and proximately caused physical, economic, and emotional harm to Mr. Escobar-Lopez.

250. Mr. Escobar-Lopez seeks injunctive and declaratory relief against all Defendants. Mr. Escobar-Lopez seeks a declaratory judgment that the Enforcement of Immigration Laws Policy fails to comply with the TRUTH Act. Mr. Escobar-Lopez seeks injunctive relief enjoining Defendants from continuing to engage in the above-described policy, practice, and conduct of violating Mr. Escobar-Lopez's rights under the TRUTH Act, including, but not limited to: (1) failing to provide an individual with a written consent form before granting ICE access to that individual; (2) failing to provide an individual with copies of any ICE hold,

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

58

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

notification, or transfer requests that are received regarding that individual; (3) failing to inform an individual subject to an ICE request whether they intend to comply with the ICE request; and (4) failing to provide an individual with a notification that was provided to ICE concerning that individual's release from law enforcement custody.

251.   Mr. Escobar-Lopez seeks compensatory damages from Defendants Daly City and DCPD and compensatory and punitive damages from DOES 1 through 20 for violations of Mr. Escobar-Lopez's rights under the TRUTH Act, including, but not limited to, failing to: (1) provide Mr. Escobar-Lopez with the required written consent form before granting ICE access to him; (2) provide Mr. Escobar-Lopez with copies of the ICE hold, notification, and transfer requests that they received regarding Mr. Escobar-Lopez; (3) inform Mr. Escobar-Lopez whether they intended to comply with the ICE requests; and (4) provide Mr. Escobar-Lopez with the same notification that was provided to ICE concerning Mr. Escobar-Lopez's release from DCPD custody.

252.   The wrongful acts of Defendants and Officers Hart and Todaro were done maliciously, oppressively, fraudulently, and in conscious disregard of the rights, safety, and health of Mr. Escobar-Lopez and others. Mr. Escobar-Lopez is entitled to punitive and exemplary damages to deter such behavior by Defendants and others in the future.

## THIRTEENTH CLAIM FOR RELIEF

### Negligence

### (Against All Defendants)

253.   Mr. Escobar-Lopez incorporates by reference each of the allegations in the paragraphs above, as though fully set forth here.

254.   Officers Hart and Todaro, and DOES 1 through 20, are liable for breaching the duty of care owed to Mr. Escobar-Lopez by: (1) arresting and detaining him without probable cause or reasonable suspicion, and without explanation, based on a civil immigration warrant; (2) cooperating with and assisting ICE in enforcing federal immigration laws; (3) transferring Mr. Escobar-Lopez directly into ICE custody; and (4) failing to provide him access to a Spanish language interpreter, all in violation of the Values Act and the DCPD language access policy. In

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

59

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

light of the Values Act and the DCPD language access policy, Defendants could have reasonably foreseen that their actions would result in harm to Mr. Escobar-Lopez.

255.    Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

256.    Defendants' and the Officers' negligence was a substantial factor in causing Mr. Escobar-Lopez's injuries.  As a direct result and proximate result of Defendants' and the Officers' various negligent acts, Mr. Escobar-Lopez suffered injuries including physical and emotional harm and distress, as well as economic harm from the time he was detained by ICE. But for Defendants' and the Officers' conduct, Mr. Escobar-Lopez would not have been falsely arrested, handcuffed, searched, and transferred to and detained by ICE for almost three months.

257.    Mr. Escobar-Lopez seeks compensatory damages from Defendants Daly City and DCPD.  Mr. Escobar-Lopez seeks compensatory and punitive damages from DOES 1 through 20 in their individual capacities for their negligent conduct.

258.    The wrongful acts of Defendants and Officers Hart and Todaro were done maliciously, oppressively, fraudulently, and in conscious disregard of the rights, safety, and health of Mr. Escobar-Lopez and others.  Mr. Escobar-Lopez is entitled to punitive and exemplary damages to deter such behavior by Defendants and others in the future.

**FOURTEENTH CLAIM FOR RELIEF**

**Negligent Infliction of Emotional Distress**

**(Against All Defendants)**

259.    Mr. Escobar-Lopez incorporates by reference each of the allegations in the paragraphs above, as though fully set forth here.

260.    Defendants Hart and Todaro, and DOES 1 through 20, acted negligently in failing to comply with the Values Act.

261.    As a result, Mr. Escobar-Lopez suffered serious emotional distress of the nature that an ordinary reasonable person in his situation would suffer including, but not limited to,

anxiety, worry, humiliation, shame, and fear.  This includes, but is not limited to, the fear of being deported to El Salvador; humiliation for being arrested and detained in front of his then girlfriend (now fiancée) and for spending almost three months in an ICE detention facility; humiliation for wearing an ankle monitor after his release under the ISAP program; and anxiety, shock, worry, and shame for being falsely arrested, detained, and handcuffed without probable cause or reasonable suspicion.

262.    Defendants' and the Officers' negligence was a substantial factor in causing Mr. Escobar-Lopez's serious emotional distress.  But for the actions of Defendants and the Officers, Mr. Escobar-Lopez would not have been falsely arrested by DCPD, and would not have been detained by ICE.

263.    Defendants Daly City and DCPD may be held vicariously liable for the conduct of Officers Hart and Todaro, and DOES 1 through 20, who were acting under color of law and in the ordinary course of their employment, pursuant to California Government Code Section 815.2(a).

264.    Mr. Escobar-Lopez seeks compensatory damages from Defendants Daly City and DCPD and compensatory and punitive damages from DOES 1 through 20 in their individual capacities for their negligent infliction of emotional distress on Mr. Escobar-Lopez.

265.    The wrongful acts of Defendants and Officers Hart and Todaro were done maliciously, oppressively, fraudulently, and in conscious disregard of the rights, safety, and health of Mr. Escobar-Lopez and others.  Mr. Escobar-Lopez is entitled to punitive and exemplary damages in the amount to be ascertained according to proof, which is appropriate to punish or set an example of Defendants and deter such behavior by Defendants and others in the future.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Mr. Escobar-Lopez prays that the Court:

A.    Issue a permanent injunction against Daly City, DCPD, and DOES 1 through 20, prohibiting DCPD and Daly City officers, agents, successors, employees,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

61

representatives, and any and all persons acting in concert with Daly City and/or DCPD from:

1.    Prolonging a traffic stop of Mr. Escobar-Lopez or other persons to conduct an immigration investigation;

2.    Inquiring into the immigration status of Mr. Escobar-Lopez or other persons;

3.    Providing personal information about Mr. Escobar-Lopez or other persons to immigration authorities for immigration purposes;

4.    Detaining and arresting Mr. Escobar-Lopez or other persons based on a civil immigration warrant;

5.    Denying language access services to Mr. Escobar-Lopez or other persons who are limited English proficient and are stopped, detained, interrogated, or arrested by DCPD;

6.    Transferring Mr. Escobar-Lopez or other persons to ICE custody;

7.    Notifying ICE regarding Mr. Escobar-Lopez's or other persons' release date and time;

8.    Assisting or cooperating with federal immigration authorities unless otherwise required by federal or California state law;

9.    Any practices that facilitate the above conduct.

B.    Issue an injunction requiring Daly City and DCPD to provide a U-Visa I-918 Supplement B certification that Mr. Escobar-Lopez was the victim of false imprisonment based on the facts as alleged in this Complaint.

C.    Issue declaratory relief finding that the Immigration Violations Policy violated the Values Act and that the Enforcement of Immigration Laws Policy continues to violate the Values Act and the TRUTH Act.

D.    Issue a permanent injunction requiring Daly City and DCPD to revoke and/or repeal the Enforcement of Immigration Laws Policy, and to develop and adopt a new replacement policy, with input and feedback from experienced community

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

62

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781

organizations (including counsel in this case), that complies with the Values Act and the TRUTH Act.

E.    Award Mr. Escobar-Lopez compensatory, incidental, special, and punitive damages.

F.    Award Mr. Escobar-Lopez restitution.

G.    Award pre-judgment and post-judgment interest to the extent permitted by law.

H.    Award Mr. Escobar-Lopez his costs and expenses, including reasonable attorneys' fees to the extent permitted by law.

I.    Award such other and further relief as the Court may deem just and proper.

## XIII.    **DEMAND FOR JURY TRIAL**

In accordance with Federal Rule of Civil Procedure 38(b), and Northern District Local Rule 3-6(a), Plaintiff hereby demands a jury trial on all issues triable by a jury.

DATED:  March 12, 2020                          Respectfully submitted,

LATHAM & WATKINS LLP

By:      */s/ Belinda S Lee*
Belinda S Lee (CA Bar No. 199635)
Gavin M. Masuda (CA Bar No. 260480)
Diana A. Aguilar (CA Bar No. 304427)
Aamir Virani (CA Bar No. 328920)
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
*belinda.lee@lw.com*
*gavin.masuda@lw.com*
*diana.aguilar@lw.com*
*aamir.virani@lw.com*

ASIAN AMERICANS ADVANCING
JUSTICE – ASIAN LAW CAUCUS
Angela F. Chan (CA Bar No. 250138)
55 Columbus Avenue
San Francisco, CA 94111
*angelac@advancingjustice-alc.org*

*Attorneys for Plaintiff Jose Armando Escobar-Lopez*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

63

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
Case No. 20-cv-1781